The sole issue is: Can the manufacturer of a garbage packer, which the manufacturer mounts on a truck chassis, be held liable under the Alabama Extended Manufacturer's Liability Doctrine for an injury resulting from a defect in the chassis, not in the packer?
The trial court granted summary judgment to the manufacturer of the packer and also to its franchisee, which had sold the packer to the owner of the truck. We affirm.
Leach Pontiac-GMC Truck, Inc., originally purchased a new truck cab and chassis from General Motors Corporation. It then placed an order with Ingram Equipment Company, Inc., a franchisee that sells refuse equipment manufactured by The Heil Company, for the purchase of a garbage packer. Ingram Equipment, Inc., in turn ordered the packer from Heil, which agreed to sell and mount the Heil packer unit onto the truck. Following Heil's mounting of the packer unit onto the truck, Ingram delivered the garbage truck to Leach Pontiac-GMC Truck, Inc., where it was ultimately picked up by plaintiff's employer, Whitfield Sanitation Company.
On the occasion of the accident, plaintiff David Sanders, as a sanitation worker, had carried a garbage container to the truck *Page 880 
and dumped it into the packer. He then walked up alongside the truck, which had begun to roll, and placed his hands on the mirror and door handle and hopped onto the running board, located on the cab and chassis of the truck. His feet slipped off the running board and he fell to the pavement. The dual wheels of the truck ran over him in the pelvic area, causing severe internal injuries.
The undisputed facts show that the truck cab and chassis (hereinafter the "truck"), including the safety handle, the mirror, and the running board, were manufactured by General Motors Corporation.[1] It is also undisputed that Heil and Ingram Equipment, Inc., did not manufacture or design the running board from which Sanders fell. It is further undisputed that the packer unit itself was not shown to be defective; Sanders's sole contention is that the packer unit, when mounted onto the GMC truck, constituted a "completed vehicle" and that the "completed vehicle," taken as a whole, was defective.
The AEMLD has its origin in two companion cases, Atkins v.American Motors Corp., 335 So.2d 134 (Ala. 1976), and Casrellv. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976). Under the AEMLD, the plaintiff's burden of proof is as follows:
 "[Plaintiff must prove that] he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 "(a) the seller is engaged in the business of selling such a product, and
 "(b) it is expected to, and does reach the user or consumer without substantial change in the condition in which it was sold."
General Motors Corp. v. Edwards, 482 So.2d 1176, 1182 (Ala. 1985), citing Atkins, supra, at 141 and Casrell, supra, at 132-33. See also Restatement (Second) of Torts § 402A (1977).
The paramount issue raised on appeal is whether someone who manufactures a nondefective component and then participates in assembling the nondefective component onto a defective product, can be held liable under the AEMLD for injuries occurring as a result of the defect in a component not manufactured by that party.
This Court, in Andrews v. John E. Smith's Sons Co.,369 So.2d 781, 784 (Ala. 1979), addressed this specific issue, stating:
 "[A] manufacturer who uses component parts in manufacturing or assembling a product for sale as a complete unit may be liable under appropriate circumstances where the defect is in a component part. But [the defendant] is not in this instance manufacturing products in this fashion. It has simply made replacement parts which were not alleged to be defective in themselves. The alleged defect here is in the design of the meat grinder, which [the defendant] was not responsible for. Under [plaintiff's] approach, a tire manufacturer could be liable for injuries resulting from the defectively designed body structure in an automobile."
We find that the rationale of Andrews is applicable here; therefore, we hold that a distributor or manufacturer of a nondefective component is not liable for defects in a product that it did not manufacture, sell, or otherwise place in the stream of commerce. As this Court stated in Atkins, supra, "the gravamen of the action [under the AEMLD] is that the defendant manufactured or designed or sold a defective product which, because of its unreasonably unsafe condition, injured the plaintiff." Atkins, supra, at 139. Our holding, however, does not change the rule of law stated in Andrews that "a manufacturer who uses component parts in manufacturing or assembling a product for sale as a complete unit may be liable under appropriate circumstances where the defect is in a component part." Andrews, supra, at 784. *Page 881 
Because Sanders did not allege that Ingram and Heil manufactured or sold a defective component and offered no proof of a causal relationship between his injury and some action traceable to those defendants, there was no genuine issue of material fact presented and summary judgment was properly granted. See Rule 56 (c), Ala.R.Civ.P.
AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.
[1] General Motors Corporation is also a defendant in this case, but is not a party to this appeal. The summary judgment granted in favor of Ingram Equipment, Inc., and The Heil Company was made final pursuant to Rule 54 (b), Ala.R.Civ.P.