Thomas Beech, on behalf of his minor son, Matthew, and himself, sued Outboard Marine Corporation ("OMC") in the United States District Court for the Northern District of Alabama, alleging defective design under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") for OMC's failure to include a propeller guard on its 1988 Model 85-horsepower Johnson boat engine and also alleging negligence and wantonness.[1] On OMC's motion for summary judgment, the District Court *Page 448 
withheld a ruling and, instead, issued the following memorandum opinion:
 "The court has for consideration the motion for summary judgment pursuant to Rule 56, F.R.Civ.P., filed by defendant, Outboard Marine Corporation (OMC), in the above-entitled cause. The plaintiff is Matthew Beech, an eight-year-old minor who sues through his next friend and father, Thomas L. Beech. The action is based on allegations that plaintiff was run over and injured while swimming with his father near a boat powered by an 88 horsepower Johnson outboard motor manufactured by OMC.
 "In its brief in support of its Rule 56 motion, OMC alleges, correctly:
 " 'Plaintiff's entire case is based upon his claim that the OMC engine was defective in one respect: it did not have a propeller guard. That is the only allegation of defect against OMC.'
 "OMC argues that the issues of Alabama law are indistinguishable from the issues presented in Elliott v. Brunswick Corp., 903 F.2d 1505 (11th Cir. 1990) [cert. denied, Elliott v. Mercury Marine, ___ U.S. ___, 111 S.Ct. 756, 112 L.Ed.2d 776
(1991)]. Both parties agree that the Alabama case which comes closest to the point is General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala. 1985), which was relied upon by the Eleventh Circuit in Elliott.
However, it appears to this court pursuant to Rule 18, Alabama Rules of Appellate Procedure, that there exist questions or propositions of law which are determinative of this cause and that there are no clear controlling precedents of the Supreme Court of Alabama on the said questions or propositions.
 "Elliott was a diversity action in which the question of liability was governed by the Alabama substantive law of (1) Alabama Extended Manufacturer's Liability Doctrine; (2) negligence; and (3) wantonness. In Elliott, the Eleventh Circuit reversed the judgment entered by the district court on a jury verdict in favor of a swimmer injured by an unguarded propeller manufactured, designed, and marketed by the defendant in that case. The Eleventh Circuit gave two basic reasons for its finding or interpretation of the applicable Alabama Law: (1) that the plaintiff had not proven that a safer, practical alternative design was available to the manufacturer-defendant; and (2) that a pleasure boat's unguarded propeller is not dangerous beyond the expectation of an ordinary consumer. West Publishing Company's key numbered propositions of law preceding its publication of Elliott, both under the heading 'Products Liability,' are:
 " 'Pleasure boat's unguarded propellers are not "dangerous beyond expectations of ordinary consumer" so as to render propeller defective within meaning of Alabama products liability law.
 " 'Failure of pleasure boat motor manufacturer to design safe, practical propeller guard for pleasure boat motors did not render propeller unreasonably dangerous under Alabama products liability law, where neither industry custom, nor pertinent regulations, dictated use of propeller guards.'
 "The Eleventh Circuit stated these as propositions of Alabama law which led to its conclusion that defendant's motion for a directed verdict should have been granted. The Elliott case was submitted to a jury which, in theory if not in fact, evaluated the considerable expert testimony offered by plaintiff, all to the general effect that a propeller guard could have been adapted and made feasible for use on a pleasure craft such as the one which injured plaintiff while she was swimming. Plaintiff's theory was not that a feasible propeller guard presently existed but that a feasible guard could have been developed and been available by a reasonable use of the manufacturer's resources. Theoretically at least, the jury believed the plaintiff's experts. The central question on appeal to the Eleventh Circuit was 'could plaintiff's experts be believed?' The Eleventh Circuit concluded that 'the consensus of the experts [is] that the industry's adoption of propeller guards at this point would not *Page 449 
only be infeasible, but unwise, unsafe, and unfortunate.' This was not only the Eleventh Circuit's interpretation of the opinions of the experts in that case but was an expression by the Eleventh Circuit of the law of Alabama on this rather narrow subject.
 "It is so highly unusual as to amount to a miracle that this court is now confronted with the identical issues of Alabama law recently presented to [the Court of Appeals] in Elliott. The easier course would be to grant OMC's motion for summary judgment on the precedent of Elliott. But plaintiff in the instant case, while unsuccessfully attempting to distinguish this case from Elliott, has also asked this court to certify to the Supreme Court of Alabama certain pertinent questions pursuant to Rule 18, Alabama Rules of Appellate Procedure. Because this court can see no legitimate, factual, or legal distinction between Elliott and this case, questions, as composed by this court and not by plaintiff's counsel, will be certified. In particular, the expert witnesses in this case and in Elliott will either be identical, or will be making the same technical and bio-mechanical arguments. Under the circumstances, this court deems it appropriate that the highest appellate court in the State of Alabama, the state whose substantive laws are necessarily to be applied, be given an opportunity to express itself before this court expresses itself. Therefore, by separate order, this court will certify certain questions to the Supreme Court of Alabama.
 "This court will keep OMC's motion for summary judgment under advisement until the Supreme Court of Alabama either answers the certified questions or declines to accept the certification."
The questions the District Court certified to this Court are:
 "A. Assuming that several witnesses for plaintiff and several witnesses for defendant, all having the threshold credentials and qualifications to be allowed to express opinions as experts on water safety and/or boat propeller design and/or the feasibility of designing a guard for a boat propeller, express differing opinions as to the feasibility and desirability of designing and marketing a propeller guard for pleasure craft which, while arguably creating other dangers, would, in fact, have protected a swimmer under certain circumstances against certain kinds of propeller injuries, can a swimmer injured under such circumstances by an unguarded propeller present a prima facie case under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD); or is the trial court precluded from submitting to the jury the question of whether or not a safer practical alternative design could have been or should have been made available to the consumer public?
 "B. Is it possible under AEMLD for an injured swimmer to present expert testimony which will make out a jury issue of product defect when the only alleged defect is the absence of a guard on a pleasure boat propeller on an outboard motor and when the only evidence offered by plaintiff is that a feasible propeller guard could have been
designed by a proper use of the manufacturer's resources?
 "C. As a matter of Alabama law, is or is not a pleasure boat's unguarded propeller dangerous beyond the expectation of an ordinary consumer?
 "D. Assuming that several witnesses for plaintiff and several witnesses for defendant, all having the threshold credentials and qualifications to be allowed to express opinions as experts on water safety and/or boat propeller design and/or the feasibility of designing a guard for a boat propeller, express differing opinions as to the feasibility and desirability of designing and marketing a propeller guard for pleasure craft which, while arguably creating other dangers, would, in fact, have protected a swimmer under certain circumstances against certain kinds of propeller injuries, can a swimmer injured under such circumstances by an unguarded propeller present a prima facie case under a negligence theory, or is the court precluded *Page 450 
from submitting to the jury the question of whether the failure to provide such a propeller guard constitutes negligence?
 "E. Assuming that several witnesses for plaintiff and several witnesses for defendant, all having the threshold credentials and qualifications to be allowed to express opinions as experts on water safety and/or boat propeller design and/or the feasibility of designing a guard for a boat propeller, express differing opinions as to the feasibility and desirability of designing and marketing a propeller guard for pleasure craft which, while arguably creating other dangers, would, in fact, have protected a swimmer under certain circumstances against certain kinds of propeller injuries, can a swimmer injured under such circumstances by an unguarded propeller present a prima facie case under a wantonness theory, or is the court precluded from submitting to the jury the question of whether or not the failure to provide such a propeller guard constitutes wantonness?
 "All of these questions presuppose that substantial evidence of proximate causation is presented by the plaintiff."
(Emphasis original.)
As the District Court noted, this case is, indeed, identical in law and in fact to Elliott v. Brunswick Corp., 903 F.2d 1505
(11th Cir. 1990), cert. denied, Elliott v. Mercury Marine, ___ U.S. ___, 111 S.Ct. 756, 112 L.Ed.2d 776 (1991). At the risk of being repetitious, we hold, as the Eleventh Circuit Court of Appeals did in Elliott, that General Motors Corp. v. Edwards,482 So.2d 1176 (Ala. 1985), is determinative of the questions presented to us by the District Court. In deciding whether a cause of action for failure to provide a propeller guard exists in Alabama, we must answer this dispositive question: Is an outboard motor, on a pleasure boat and lacking a propeller guard, "defective" as that term is defined under Alabama law? In answering that threshold question, we are guided by the language in General Motors Corp.:
 "In order to prove defectiveness, the plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured the automobile. The existence of a safer, practical, alternative design must be proved by showing that:
 "(a) The plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that
 "(b) taking into consideration such factors as the intended use of the vehicle, its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used."
482 So.2d at 1191 (emphasis added).
We decline to hold, as a matter of law, that simply because "a feasible propeller guard could have been designed by a proper use of the manufacturer's resources" that an "alternative design" existed. Furthermore, a propeller guard that "arguably creat[es] other dangers" is not a "safer" design within the meaning of General Motors Corp. v. Edwards. We also note that, according to present industry standards, the evidence does not conclusively show that such propeller guards are "practical." Finally, we agree with and adopt the interpretation by the Eleventh Circuit Court of Appeals inElliott of the consumer expectation test under Alabama law. 903 F.2d at 1507.
In conclusion, we answer questions B and C in the negative. With regard to questions A, D, and E, we hold that there is no cause of action, under either the AEMLD or negligence or wantonness theories, for failure to provide propeller guards on pleasure boat outboard motors.
QUESTIONS ANSWERED.
ALMON, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Although the style of the case does not so indicate and the District Court's statement to this Court does not so indicate, the complaint indicates that Thomas Beech also sued individually. *Page 451