Memorandum Opinion
 

 ALBRITTON, District Judge.
 

 On December 8, 1995, Marilyn Brest (“Plaintiff’) filed her First Amended Complaint against Chrysler Corporation, Chrysler Motors Corp., American Motors Corp., Regie Nationale Des Unis Renault, Jeep Eagle Corp., Jeep Eagle Sales Corp., Bestop Inc. (“Bestop”), and several fictitious defendants. The Complaint alleged several grounds for liability arising from an automobile accident which resulted in the death of the Plaintiffs husband. A stipulation of dismissal was filed on September 24, 1996 dismissing all Defendants, with the exception of Bestop Inc., from the lawsuit. Therefore, the present action exists only against Defendant Bestop. The case is presently before the court on Bestop’s Motion for Summary Judgment filed on August 1,1996.
 

 
 *845
 

 Summary Judgment Standard
 

 Rule 56(e) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where “there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where the burden of proof is on the non-moving party, as it is in this case, the movant can meet this standard by submitting affirmative evidence negating an essential element of the non-movant’s claim, or by demonstrating that the non-moving party’s evidence itself is insufficient to establish an essential element of his claim.
 
 Id.
 
 at 322, 106 S.Ct. at 2552.
 

 The burden then shifts to the non-moving party to make a showing sufficient to establish the existence of all essential elements to his claims, and on which he bears the burden of proof at trial.
 
 Id.
 
 To meet this burden, the non-moving party cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing there is a genuine issue for trial.
 
 Id
 
 at 324, 106 S.Ct. at 2553. A dispute of material fact “is ‘genuine’ ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where the parties’ factual statements conflict or inferences are required, the court will construe the facts in the light most favorable to the nonmovant.
 
 Barnes v. Southwest Forest Industries,
 
 814 F.2d 607, 609 (11th Cir. 1987).
 

 Facts
 

 The evidence before the court establishes the following facts:
 

 On December 17, 1993, Lawrence and Marilyn Brest left a bank parking lot adjacent to the Northside Mall complex in Do-than, Alabama. Mr. Brest was driving the couple’s Jeep CJ-7. Mr. Brest stopped at an intersection and then proceeded to enter the intersection. While proceeding through the intersection the Jeep CJ-7 was struck by another vehicle, ejecting Mr. Brest from the vehicle. The Jeep CJ-7 overturned and landed on Mr. Brest pinning him beneath it. Mr. Brest later died from the injuries he sustained in the accident. Neither Mr. Brest nor Mrs. Brest was wearing their seat belt at the time of the accident.
 

 The Jeep CJ-7 was not manufactured, designed or sold by Bestop. It was, however, equipped with a “soft-top” manufactured by Bestop. The soft-top had a fabric top as well as fabric doors. The purpose of a soft-top roof is to protect the occupants of the Jeep from the weather, such as wind and rain. The soft-top has the following warning affixed to it above the rear view mirror,:
 

 WARNING:
 

 The top and doors on this vehicle are designed only for protection against the elements. Do not rely on the top and doors to contain occupants within the vehicle or to protect against injury during an accident.
 

 WEAR SEATBELTS AT ALL TIMES
 
 [1]
 

 Although vehicle doors are regulated by Federal Motor Vehicle Safety Standard 206, the soft top and doors of the Jeep CJ-7 were exempted from that standard at the time of the accident. However, most sports utility manufacturers equipped their vehicles with doors that complied with standard 206. The rollover propensity of Jeeps, as well as the danger posed by ejectment during an accident, has been documented in automotive publications since the 1960’s.
 

 Discussion
 

 In her response to Bestop’s motion for summary judgment, the Plaintiff voluntarily dismissed those claims in her complaint against Bestop based on the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. The case presently includes four claims against Bestop based on negligence and the Alabama Extended Manufacturers Liability Doctrine (“AEMLD”). The Plaintiffs first claim is that Bestop was negligent and/or
 
 *846
 
 wanton in the design, manufacture, inspection, testing, assembly, ... of the product, and that Bestop’s acts violated its duty to the Plaintiff not to subject her to an unreasonable risk of injury. The Plaintiffs second claim is that Bestop negligently failed to warn prospective users of the dangers inherent in their product. Plaintiffs third claim is that, under the AEMLD, Bestop’s product was unreasonably dangerous to persons who would come into contact with it under conditions of foreseeable and intended use. Finally, the Plaintiff claims that Bestop failed to warn consumers of the defective conditions of its product.
 

 Counts I & III
 

 Bestop has moved for summary judgment on the basis that the responsibility for the design of the doors rests with Chrysler, the manufacturer of the Jeep; that Bestop was not negligent in the design of the soft-top; and that the Plaintiff assumed the risk of driving a jeep with a vinyl top that was not intended to restrain a person within the vehicle. The Plaintiff asserts that since Bestop knew or should have known of the increased vulnerability of the Jeep CJ-7 to roll over, Bestop was negligent for failing to employ alternative door designs which were available and which would have prevented ejection from the jeep in the event of a roll-over. Plaintiff also claims that under the AEMLD the Defendant’s product is defective because it is unreasonably dangerous, i.e., that it is not fit for its intended purpose or it does not meet the reasonable expectations of the ordinary consumer. The Plaintiffs brief makes it clear that her argument under the AEMLD is that it was the industry practice to use doors which met the federal safety standards; that the Defendant was aware of the Jeep CJ-7’s propensity to roll over; and that it was feasible to make a door compatible with a soft top which met the federal safety standards. Therefore, it is clear that the Plaintiffs negligence and AEMLD claims both hinge on the failure of the Defendant to incorporate a superior, alternative door design into its product.
 

 Bestop first contends that it was not negligent in the design of its doors, and that if there was a defect in the doors it was the responsibility of Chrysler, the manufacturer, not Bestop. In a similar case which also hinged on the availability of an alternative design, the Supreme Court of Alabama held that “[t]o prove defectiveness under Alabama law, a plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time it manufactured its product.”
 
 Beech v. Outboard Marine Corp.,
 
 584 So.2d 447, 450 (Ala.1991) (citation omitted);
 
 Elliott v. Brunswick Corp.,
 
 903 F.2d 1505, 1507 (11th Cir.1990),
 
 cert. denied,
 
 498 U.S. 1048 (1991). The Plaintiff is correct that, according to the Supreme Court of Alabama,
 

 The existence of a safer, practical, alternative design must be proved by showing that: (a) The plaintiffs injuries would have been eliminated or in some way reduced by use of the alternative design; and that (b) taking into consideration such factors as the intended use of the vehicle, its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer’s ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used.
 

 Beech,
 
 584 So.2d at 450 (citing
 
 General Motors Corp. v. Edwards,
 
 482 So.2d 1176 (Ala. 1985)). The Supreme Court of Alabama applied this test to the plaintiffs negligence, wantonness, and AEMLD claims and held that there was no cause of action under any of these theories of recovery.
 

 As discussed above, the Plaintiff must provide sufficient evidence on both elements described in
 
 Beech
 
 to create a genuine issue of material fact that the product in question is in fact defective. The Plaintiff has presented the sworn statement of David A. Renfro as evidence in opposition to the Defendant’s motion for summary judgment. In the relevant portion of his affidavit, Dr. Renfro states that “[njumerous designs exist for incorporation of a removable door for use with a soft top which also meets passenger vehicle door safety requirements.” Dr. Renfro also makes an ambiguous statement in ¶ 6 of his
 
 *847
 
 affidavit. Paragraph 6 states
 
 in
 
 its
 
 entirety,
 
 “[Although in 1990, it was not a legal requirement for the industry practice with respect to sport utility vehicles to use doors which complied with FMVSS 206.” Taken in conjunction with the Plaintiffs position in her brief, the court interprets Dr. Renfro’s statement in ¶ 6 of his affidavit to mean that the manufacturers of sport utility vehicles typically produced doors in compliance with FMVSS 206. Indeed, the Plaintiffs statement of facts in opposition to the motion for summary judgment references ¶6 for this precise proposition. The present question, however, involves the availability of safer, practical alternatives to the doors which were incorporated into Bestop’s soft-top. Paragraph 6 of Dr. Renfro’s affidavit is unhelpful in answering this question since it does not refer to doors used in conjunction with soft-tops.
 

 Analyzed under the first prong of
 
 Beech,
 
 Dr. Renfro’s statement does not refer at all to a potential elimination or reduction in the Plaintiffs injuries
 
 from
 
 an alternative design. Dr. Renfro’s statement at best allows an inference that, since a design existed which was in compliance with the vehicle door safety standards, the alternative would provide some level of enhanced safety to the occupants. Assuming that this inference is sufficient to satisfy the first prong under
 
 Beech,
 
 the court turns its attention to the factors enunciated in the second prong.
 

 As mentioned above, ¶7 of Dr. Renfro’s affidavit states that
 
 alternative designs
 
 existed for incorporating a door which met FMVSS 206 into sports utility vehicle soft-top. (emphasis added). Accepting this statement as true, neither Dr. Renfro’s affidavit, nor any of the Plaintiffs other evidence includes any mention of the specific factors enunciated by the Supreme Court of Alabama in
 
 Beech
 
 which are necessary to establish that the Defendant’s product is defective. In particular, the Plaintiff has failed to provide any evidence that:
 

 [TJaldng into consideration such factors as the intended use of the vehicle, its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer’s ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used.
 

 Id.
 

 In this respect, the present case is very similar to the recent Supreme Court of Alabama decision in
 
 Yarbrough v. Sears Roebuck & Co.,
 
 628 So.2d 478 (Ala.1993). In
 
 Yarbrough,
 
 the plaintiffs relied solely on an expert witness’s general statement that “there is a simple design modification to [the kerosene heater] which could have signaled misfueling and provided warning and/or turned off the heater before it flared out of control.”
 
 Id.
 
 at 483. The court held that with respect to the plaintiffs’ AEMLD claims:
 

 [T]he record is devoid of any proof of the existence of a feasible, available alternative to the design presently used in the heater that would have averted the danger presented by the heater. There was no detail or explanation provided; there was no evidence to prove that “a simple design modification” was safer or more practical or would have reduced or prevented the Yarbroughs’ injuries and loss; and there was no evidence to show that the utility of an alternative design outweighed the utility of the design actually used____ Based on the foregoing, we conclude that the trial court properly entered the summary judgment for [defendants].
 

 Id.
 
 The
 
 Yarbrough
 
 court then held that since the plaintiffs supported their negligence and wantonness claims with the same evidence as their AEMLD claims, the defendants were also entitled to summary judgment on those claims.
 
 Id.
 

 The Plaintiff has not presented any evidence on the issue of whether a safer, practical, alternative design was available beyond the general statement of Dr. Renfro. The Supreme Court of Alabama has made it clear that to prove defectiveness a Plaintiff must offer detailed proof concerning the aforementioned factors. Due to the Plaintiff’s failure to do so in this case, the court finds that summary judgment is appropriate in favor of
 
 *848
 
 the Defendant on counts one and three of the Plaintiffs amended complaint.
 

 Counts II & IV
 

 The Plaintiff claims that the Defendant’s failure to warn consumers of the danger posed by the vinyl doors and top of the Jeep CJ-7 in the event of a roll-over constitutes negligence and is actionable under the AEMLD. The Defendant has moved for summary judgment on the basis that it exercised reasonable diligence in making any dangers known to the Plaintiff and the deceased. The soft-top manufactured by the Defendant and mounted on the Plaintiffs Jeep CJ-7 included the following warning displayed above the rear view mirror:
 

 WARNING:
 

 The top and doors on this vehicle are designed only for protection against the elements. Do not rely on the top and doors to contain occupants within the vehicle or to protect against injury during an accident.
 

 WEAR SEATBELTS AT ALL TIMES
 

 The Plaintiff maintains that this warning was inadequate because it failed to warn consumers of the increased risk caused by its doors in the event of a roll-over.
 

 The purpose of placing a duty to warn on the manufacturer is to familiarize the consumer with the dangers of the product, of which he may be unaware.
 
 See Gurley v. American Honda Motor Co.,
 
 505 So.2d 358 (Ala.1987);
 
 Reynolds v. Bridgestone/Firestone Inc.,
 
 989 F.2d 465 (11th Cir. 1993). As explained by the Alabama Supreme Court, “[i]f a manufacturer places a [product] on the market which is imminently dangerous when put to its intended purpose, then the manufacturer is chargeable with the duty not to expose to such danger an ignorant public who will likely use it.”
 
 Ford Motor Co. v. Rodgers,
 
 337 So.2d 736, 739 (Ala.1976);
 
 see also Gurley,
 
 505 So.2d at 361. However, it is well settled under Alabama law that a manufacturer is under no duty to warn when the danger associated with a product is obvious.
 
 Id.
 
 (citing
 
 Rodgers,
 
 337 So.2d 736).
 

 The Plaintiffs position is that since sport utility vehicles have a propensity to roll-over, and since the Defendant knew or should have known of this propensity, the Defendant had an obligation to warn consumers of the specific danger posed by its soft-top in the event of a roll-over. In
 
 Sanders v. Ingram Equipment, Inc.,
 
 531 So.2d 879 (Ala. 1988), the Supreme Court of Alabama held that a manufacturer of a nondefective component part cannot be held liable for defects in a product that it did not manufacture. In
 
 Sanders,
 
 the defendant manufactured a non-defective “packer” and incorporated it into a garbage truck chassis. The plaintiff was injured when he fell off the running board of the truck. Although it was undisputed that the defendant’s product was not defective, the plaintiff maintained that the packer unit, when mounted on the chassis, constituted a completed vehicle, and the completed vehicle was defective taken as a whole. The Alabama Supreme Court rejected the logic of the plaintiffs theory, analogizing it to holding a tire manufacturer liable for injuries resulting from a defectively designed automobile.
 
 See Andrews v. John E. Smith’s Sons Inc.,
 
 369 So.2d 781 (Ala.1979). Under
 
 Sanders,
 
 it is well established in Alabama that a manufacturer can only be held liable for defects in the products that it manufactured, sold, or otherwise placed in the stream of commerce.
 
 See also Reynolds,
 
 989 F.2d at 472. Accordingly, the court finds that a component manufacturer only has a duty to warn of those dangers which derive from its component and not those dangers which derive from a completed product into which its component was incorporated.
 

 The present case is very similar to the fact situation in
 
 Sanders.
 
 The Plaintiff asserts that the Defendant’s warning was insufficient because it failed to convey the danger posed by its top when that top is used in conjunction with a vehicle with an increased propensity to roll over. In this sense, the Plaintiff is attempting to hold the Defendant liable on the basis of a danger associated with a different product, the Jeep CJ-7, which the Defendant did not manufacture. The danger posed by the soft-top produced by the Defendant is that it does not
 
 *849
 
 provide vehicle occupants protection from being ejected from the vehicle in the event of an accident. This is precisely the danger which the Defendant addressed in the warning. The warning stated that the soft-top was only intended for protection against the elements and that occupants could not rely on the soft-top to contain them within the vehicle during an accident. Moreover, Alabama law only requires that a manufacturer’s warning:
 

 [B]e one that is reasonable under the circumstances ... not be the best possible warning. There is no duty to warn of every potential danger or to explain the scientific rationale for each warning, but only a duty to warn of those dangers which the owner would not be aware of under the particular circumstances of his use of the product in question.
 

 Gurley,
 
 505 So.2d at 361.
 

 The court finds that the warning provided by the Defendant in this case was reasonable under the circumstances because it advised the Plaintiffs of the danger of ejectment posed by the soft-top.
 
 See Gurley,
 
 505 So.2d 358. (holding that the defendants provided an adequate warning by placing a label reading “WARNING — OPERATOR ONLY — NO PASSENGERS” on the gas tank of a motorcycle intended only for one rider.) It would be unreasonable to require the Defendant to apprise consumers of the danger posed by its product and provide additional warnings addressing that same danger in each and every specific circumstance that the danger might arise. The warning provided by the Defendant was specific and appropriately apprised potential consumers of the danger posed by its soft-top product in the event of an accident. Therefore, the court finds that, as a matter of law, the Defendant’s warnings were adequate and reasonable in light of the dangers posed by its product. Accordingly, the Defendant’s Motion for Summary Judgment is due to be Granted on the Plaintiffs failure to warn claims.
 

 Conclusion
 

 Viewing the evidence in the light most favorable to the Plaintiff, the court finds that the Plaintiff has faded to submit sufficient evidence to establish a genuine issue of material fact on her claims that the Defendant’s soft-top was defective, either under a theory of negligence or under the AEMLD. Furthermore, as a matter of law, the Defendant provided an adequate warning with its product apprising potential consumers of the danger posed by the soft-top. Accordingly, the Defendant is entitled to summary judgment on all remaining claims. A separate order will be entered in accordance with this opinion.
 

 [1]
 

 . A similar warning was printed on the Jeep’s visor and in the owner’s manual.