**Frances McPHAIL, as Administratrix of the Estate of David Harry McPhail, deceased, Plaintiff,**

v.

**MITSUBISHI MOTOR MANUFACTURING OF AMERICA, INC., Mitsubishi Motor Sales of America, Inc., and Value Rent–A–Car, Inc., Defendants.**

No. Civ.A. 96–0119–RV–C.

United States District Court, S.D. Alabama, Southern Division.

June 4, 1997.

Wm. Saliba, Mobile, AL, for plaintiff.

D. Alan Thomas, Birmingham, AL, for defendant.

## ORDER

VOLLMER, District Judge.

Presently before the court is defendants' motion for summary judgment (Doc. 37) on all counts. Defendants have submitted a brief (Doc. 38) and evidence in the form of affidavits, expert reports, and deposition excerpts (attachments to Doc. 37) in support of their motion. Plaintiff filed a brief and evidentiary submissions in response to the motion (Doc. 45). Thereafter, defendants submitted a reply brief (Doc. 49) to which plaintiff replied in kind (Doc. 52). Also before the court is plaintiff's motion for partial summary judgment (Doc. 39) [1] with supporting brief (Doc. 40).[2] Thereafter, defendants filed a response (Doc. 48); plaintiff did not file a reply brief. These cross motions for summary judgment mo-

1. The court previously granted plaintiff's "motion to amend motion for summary judgment" (Doc. 44). The amendments merely substitute the correct numerical figures of certain measurements set forth in the brief in support of summary judgment.

2. Plaintiff's counsel has not complied with Local Rule 8, which requires that any motion for summary judgment be accompanied by proposed findings of fact and conclusions of law. Plaintiff's counsel is advised to heed the Local Rules in future litigation before this court.

tions are now ripe for disposition without oral argument. The court has carefully reviewed the law and considered the arguments of the parties. For the reasons set forth below, plaintiff's motion for summary judgment will be denied and defendants' motion for summary judgment will be granted.

Plaintiff Frances McPhail brought this product liability suit in her capacity as administrator of the estate of her deceased son, David Harry McPhail (hereinafter "McPhail"). McPhail died from injuries sustained when the rental car he was driving ran off the road, turned over two and one-half times, and struck a pecan tree. McPhail was the sole occupant. The vehicle involved was manufactured and distributed by defendants Mitsubishi Motor Manufacturing of America, Inc. (MMMA) and Mitsubishi Motor Sales of America, Inc. (MMSA), respectively. It was rented to McPhail by defendant Value Rent A Car, Inc. (VRAC). Plaintiff seeks recovery from all three defendants for McPhail's death on theories of common law negligence, common law wantonness, Alabama Extended Manufacturer's Liability Doctrine (AEMLD), and breach of implied warranty of merchantability. There are eleven counts in the Complaint, only six of which articulate specific causes of action. Plaintiff alleges (1) that the passenger compartment of the subject vehicle was not crashworthy (Count One), (2) that the accident was caused by defects in the vehicle's lighting system (Count Two), (3) that the accident was caused by a defective steering mechanism (Count Three), (4) that the accident was caused by a defect in the right rear suspension system (Count Four), (5) that the accident was caused by a defect in the brake system (Count 5), and (6) that McPhail's injuries were enhanced by the failure of the driver's side air bag to deploy during the accident (Count Six).

## I. BACKGROUND

The court has subject matter jurisdiction over this action by way of 28 U.S.C.

§§ 1332 and 1441. Venue is appropriate in this judicial district. 28 U.S.C. § 1391(a).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). *See also Adickes v. S.H. Kress, & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). All evidence must be viewed in the light most favorable to the nonmoving party. *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1500 (11th Cir.1991); *Langston v. ACT,* 890 F.2d 380, 383 (11th Cir.1989). In ruling on a motion for summary judgment, the function of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is an issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 242–43, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The standard for awarding summary judgment is the same as that for a directed verdict: "the trial judge must grant [the motion] if, under governing law, there can be but one reasonable conclusion as to the verdict." *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996). To avoid an adverse ruling on a motion for summary judgment, "the nonmoving party must provide more than a mere scintilla of evidence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997). "[T]here must be a substantial conflict in evidence to support a jury question." *Id.* (quoting *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)).

## II. FINDINGS OF FACT

1. This automotive product liability action arises out of a one-vehicle accident which occurred on March 19, 1994. Alabama Uniform Traffic Accident Report. McPhail was the driver and sole occupant of the vehicle. He died as a result of injuries sustained during the accident.

2. The subject vehicle was a 1994 Mitsubishi Galant which McPhail had rented from defendant VRAC in Jacksonville, Florida. Complaint at 2 (attachment to Doc. 1).

3. The 1994 Galant was designed by non-party Mitsubishi Motors Corporation, manufactured by defendant MMMA, and distributed by defendant MMSA.

4. The accident occurred at 12:25 a.m. while the Galant was traveling north on Alabama State Road 188 in Mobile County, Alabama. Alabama Uniform Traffic Accident Report.

5. The vehicle left the roadway in a sharp lefthand curve, rolled over, and collided with a tree. *Id.*

6. Plaintiff's accident reconstruction expert, James Anderson, testified at his deposition that at the time the vehicle left the road, it was traveling at approximately 70 mph. Anderson Depo. at 75.

7. As plaintiff's expert Fred Lewter testified, the posted speed limit for the curve was 45 mph. Lewter Depo. at 99.

8. Anderson testified that the vehicle slid sideways, tripped, rolled over two and one-half times, and struck a large pecan tree in an upside-down fashion with the driver's side leading. Anderson Depo. at 115, 120. Expert deposition testimony presented by both plaintiff and defendants shows that the speed at which the vehicle struck the tree was somewhere between 37 mph and 47 mph.

9. An autopsy later revealed that McPhail had a core blood alcohol level of 0.108%.

10. Inspections of the vehicle after the accident revealed that the right rear knuckle (part of the subject vehicle's suspension system) was fractured. According to plaintiff's own metallurgical expert, said fracture was a single-event, sheer overload fracture. Lewter Depo. at 139. There was no fatigue or pre-cracking of the knuckle. *Id.*

11. While plaintiff's experts opine (or, in the case of Anderson, assume) that the fracture of the right rear knuckle occurred as the vehicle left the pavement or shortly before, they have not come forth with evidence sufficient to permit reasonable jurors to conclude that the knuckle was fractured as the vehicle left the pavement or shortly before. Anderson Depo. at 111; Lewter Depo. at 142–43; Posey Depo. at 108; Mims Depo. at 44–45.

12. Plaintiff has not presented evidence of a safer, practical, or cost-effective alternative design for the knuckle. Lewter Depo. at 205–06.

13. The 1994 Galant driven by McPhail was equipped with a driver's front air bag; it did not have side air bags. The driver's front air bag did not deploy during the accident. However, plaintiff and defense are unanimous in their testimony that deployment of the front air bag would not have prevented McPhail's death because the vehicle sustained a side impact. Anderson Depo. at 59–60; Posey Depo. at 58–61; Mims Depo. at 39; Lewter Depo. at 219; Roberts Affidavit.

14. Plaintiff has not produced evidence of any defect in the structure of the occupant compartment—i.e., the body of the vehicle, including the side doors—or evidence that anything about the occupant compartment caused or contributed to the injuries sustained by McPhail. Posey Depo. at 101; Mims Depo. at 65. In addition, contrary to plaintiff's bald assertion, the undisputed evidence shows that the 1994 Mitsubishi Galant complied with all applicable federal side impact standards.

15. Plaintiff's experts have not testified as to any facts which would support plaintiff's claim that the lights on the Galant dimmed immediately prior to McPhail's accident. Posey Depo. at 77; Mims Depo. at 81–82.

16. Plaintiff's experts have not testified as to any facts which would support plaintiff's claim that there was a problem with the steering of the vehicle prior to the accident. Posey Depo. at 91–92; Mims Depo. at 51–52.

17. Plaintiff's experts have not testified as to any facts which would support plain-

tiff's claim that the Galant's brakes failed prior to the accident. Mims Depo. at 79; Posey Depo. at 85.[3]

18. McPhail died as a result of fatal injuries caused by the vehicle's impact with the tree. Roberts Aff. at 2.

## III. CONCLUSIONS OF LAW

■ In this product liability action, plaintiff asserts that the 1994 Mitsubishi Galant driven by decedent McPhail had one or more defects which either caused the accident or enhanced the injuries he sustained in the accident. It is contended, *inter alia*, that the subject vehicle was defective within the meaning of AEMLD. To establish liability under AEMLD, a plaintiff must show:

(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

(a) the seller engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) showing these elements, the plaintiff has proved a prima facie case although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not ⸱bought the product from, or entered into any contractual relation with, the seller.

*Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 132–33 (Ala.1976). The term "defect" is considered synonymous with "unreasonably dangerous"; a "defect" is that which renders a product "unreasonably dangerous", i.e., not fit for its intended purpose. *Id.* at 133. Thus, the Alabama Supreme Court interprets " 'defective' to mean that the product does not meet the reasonable expectations of an ordinary consumer as to its safety." *Id.*

■ "Sellers" of a product are subject to liability under AEMLD. The term "seller" includes manufacturers, suppliers, distributors, and actual sellers of a product. *Id.* at 132. Lessors of a product, such as VRAC in the instant case, are also deemed "sellers" of the product. *See Rhodes v. Tractor & Equipment Company*, 677 So.2d 194, 195–96 (Ala.1995). Thus, all three named defendants are subject to liability on plaintiff's AEMLD claim.

■ "[T]he failure of a product does not presuppose the existence of a defect." *Townsend v. General Motors Corporation*, 642 So.2d 411, 415 (Ala.1994). A defect in a product must be affirmatively shown. *Id.* And, where the product at issue—like the automobile in this case—and its alleged defects are of a "complex and technical nature," expert testimony is required to prove the existence of a defect; without expert testimony, a lay jury could not reasonably infer that a defective condition was the cause of the vehicle's failure and the cause of the resultant injury. *Brooks v. Colonial Chevrolet–Buick, Inc.*, 579 So.2d 1328, 1332–33 (Ala.1991).[4] Furthermore,

---

**3.** At his deposition, Mims testified that there was no brake fluid in the brake fluid reservoir after the accident. Mims stated that the right rear brake line was severed and that he found brake fluid sprayed all over the right rear wheel assembly. He opined that fluid should have been found in the reservoir after the accident, assuming that the reservoir had been supplied with sufficient brake fluid. On this basis, plaintiff contends that McPhail's brakes failed for lack of brake fluid and that he died as a result thereof. This contention must fail, however, because plaintiff has presented no evidence (expert or otherwise) that McPhail attempted to apply the breaks during

the course of the accident. In fact, at his deposition, Mims admitted that he had no evidence of brake application. Mims Depo. at 54–55. Moreover, Mims testified that "I couldn't tell you what the difference [of having brake fluid in the reservoir] would make ..." *Id.* at 58. He also had "no way of telling" whether the loss of brake fluid was caused by the fracturing of the knuckle during the accident or some other cause. *Id.* at 54–55.

**4.** It should be noted that two of plaintiff's experts testified that they intend to express an opinion at trial only as to certain of the al-

the doctrine of *res ipsa loquitur* is not applicable in a product liability action. *Id.* at 1333. In this case, plaintiff has, without using the actual phrase, attempted to advance her cause with this doctrine. To the extent that plaintiff has sought to avoid summary judgment by reference to *res ipsa loquitur*, the court has not considered such arguments as they are without merit.

In addition to AEMLD, plaintiff seeks recovery on theories of negligence and wantonness. These two common law claims have been subsumed by the AEMLD. *Veal v. Teleflex, Inc.*, 586 So.2d 188, 190–91 (Ala.1991). Accordingly, in considering the motions for summary judgment, the court considers these two claims as part and parcel of the AEMLD claim.

## A. The Alleged Defects

Plaintiff has attempted to show that manufacturing and/or design defects[5] existed with respect to the Galant's passenger compartment, headlights, steering, right rear suspension system, brakes, and driver's air bag. As discussed below, plaintiff has failed to produce evidence that any of these systems were defective.

### 1. Suspension System

■ Plaintiff's primary allegation is that a component of the right rear suspension—specifically, the "knuckle"—was defective by manufacture such that it fractured while the vehicle was traveling along

the roadway, thereby causing a loss of control and McPhail's subsequent death. Anderson Depo. at 111. Plaintiff's metallurgical expert, Fred Lewter, concedes that the fracture was a single-event, sheer overload fracture which would require the application of significant force. Lewter Depo. at 139, 189. However, plaintiff's experts admittedly have **no explanation** as to what mechanism could have caused the fracture **prior to the vehicle leaving the road.** *Id.* Plaintiff's experts admit that there was no fatigue or pre-cracking in the knuckle. In short, plaintiff's experts have not testified as to any facts which would support plaintiff's claim that there was a problem with the Gallant's knuckle immediately before it left the roadway. Plaintiff's allegation is that some unknown force (of about 30,000–40,000 lbs.) was exerted on the right rear suspension system from the side just as the Galant entered the curve.[6] Without evidence to support this allegation, plaintiff cannot survive summary judgment on this claim.

■ Plaintiff also contends that the knuckle was defective by design; however, she has not identified any superior alternative designs for the knuckle which could have been used in the 1994 Galant. In order to recover in an AEMLD action on an allegation of a design defect, a plaintiff **must prove that a safer, practical, alternative design was available to the**

---

leged defects. Plaintiff's metallurgical expert, Fred Lewter, testified that the only opinions he intended to offer at trial relate to the air bag and the knuckle. Lewter Depo. at 96–97. Plaintiff's accident reconstruction expert, James Anderson, testified that his area of concentration is accident reconstruction and that his opinion of defectiveness is limited to the knuckle. Anderson Depo. at 126–27.

**5.** Throughout this litigation, plaintiff has been very unclear as to whether she is claiming defectiveness by manufacture, by design, or both. Considering plaintiff's claims in the light most favorable to her, the court construes the complaint as alleging defectiveness in both manufacture and design with regard to the suspension system claim. The other

claims are intelligible solely on the purported existence of a manufacturing defect because plaintiff has alleged that the other systems suffered defects unique to this particular vehicle and because plaintiff has never alleged, as would be required for a finding of defective design, that better and safer alternative designs existed for these other systems.

**6.** In contrast, defendants' metallurgical expert, Herman Gilmore, states that the fracture occurred between the vehicle's first roll and its impact with the tree. Gilmore Rule 26 Report. Gilmore unequivocally states that there was not enough force generated by the car prior to leaving the road to cause the fracture. *Id.*

**manufacturer at the time it manufactured the automobile.** The existence of a safer, practical, alternative design must be proved by showing that:

> (a) The plaintiff's injuries would have been eliminated or in some way reduced by the use of the alternative design; and that,
>
> (b) Taking into consideration such factors as intended use of the vehicle, its style, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighs the utility of the design actually used.

*Beech v. Outboard Marine Corporation,* 584 So.2d 447, 450 (Ala.1991) (emphasis added) (citing *Edwards v. General Motors Corporation,* 482 So.2d 1176, 1191 (Ala. 1985)).

Courts have strictly construed the requirement that the plaintiff in an AEMLD action show the existence of an alternative design that is both "practical" and "safer". In *Elliott,* the Eleventh Circuit reversed an AEMLD verdict against a manufacturer of a boat motor, the alleged design defect being a lack of a guard around the motor's propeller. *Elliott,* 903 F.2d at 1506. The Eleventh Circuit held that plaintiff had failed to demonstrate that his proposed alternative design was practical, as required by Alabama law. *Id.* at 1507. The plaintiff in that case did show the jury a working alternative design actually being used on the subject boat—a ring guard that attached to the motor's propeller and reduced boat speed by only five miles per hour. *Id.* at 1509. The Court noted that even though plaintiff demonstrated a working model of this prototype actually being used on the subject product, plaintiff failed to demonstrate the existence of a **practical** design. *Id.* The Court stated that the plaintiff's demonstration showed only that it was possible to equip the motor with an alternative design, not that the design was "practical." *Id.*

The strict nature of this standard also is shown in *Beech v. Outboard Marine Corp.,* 584 So.2d 447 (Ala.1991), another propeller guard case. In *Beech,* the Alabama Supreme Court followed the reasoning of *Elliott* and held that plaintiff failed to demonstrate that a reasonably feasible practical alternative existed at the time of manufacture. The Court stated that it "decline[d] to hold, as a matter of law, that simply because a 'feasible propeller guard could have been designed by a proper use of the manufacturer's resources' that an 'alternative design' existed." *Id.* at 450.

In the present case, plaintiff's metallurgical expert, Fred Lewter, testified as follows:

> Q: You're critical of what my client did in this case, and you say something else should have been done, but you haven't done it and you don't have the alternative, right?
>
> A: It's not my job to get the alternative to tell your client how to design their part.

Lewter Depo. at 205. While Lewter himself may not have been charged with the responsibility of designing and testing an alternative design, plaintiff is shouldered with such a burden—a burden which she has failed to meet.

Plaintiff contends, by way of the expert testimony of Lewter, that the cast iron knuckle should have been made out of steel. Lewter Depo. at 205. However, he further testified that he did not know whether steel knuckle design would be practical:

> Q: You can't tell me what kind of steel, you can't tell me the shape you would have used?
>
> A: No.
>
> Q: And can you tell me, to a reasonable degree of engineering certainty, that the same thing would not have happened?
>
> A: I could probably—I could tell you several steels, under several treatments, in the same design, that it

would not have been possible to have happened. **Let's don't get into exotic heat treatment here.**

Q: Because it wouldn't be practical, would it?

A: Sometime it would, sometimes it wouldn't.

Lewter Depo. at 206 (emphasis added). Clearly, plaintiff's own expert concedes that he does not have a specific alternative design for the knuckle, and that he has not satisfied the "practical" requirement of *Elliott* and *Beech*. Indeed, plaintiff, through her experts, has not attempted to produce an alternative knuckle design. Because plaintiff has failed to show that there is a specific, safer, practical alternative design for the knuckle, summary judgment in favor of defendants is proper on plaintiff's claim that there was a design defect in the Galant's suspension system.

### 2. Air Bag

■ Plaintiff contends that there was a manufacturing defect in the air bag system which prevented the driver's air bag from deploying during the accident and, therefore, that defendants are liable for McPhail's death. Both plaintiff and defense experts agree that the deployment of the driver's air bag would not have prevented McPhail's death. It is undisputed that the air bags in the 1994 Galant were designed to offer protection in frontal impacts and not in side impacts. Posey Depo. at 59. As plaintiff's expert Anderson testified:

A: ... the air bag—failure of the air bag to deploy did not prevent him from being—would not have prevented him—Had the air bag deployed, he would have still been killed.

. . . . .

Q: And with the impact to the driver's door, an air bag in front of this occupant is not going to do any good?

A: Correct.

7. Plaintiff has also moved for summary judgment on Count Seven. Count Seven reads, in

Anderson Depo. at 58–60. Plaintiff's expert Owen Posey testified:

Q: ... The impact with the tree that resulted in Mr. McPhail's death was the side impact?

A: Yes, sir.

Q: You don't intend to give any opinion that had the driver's side air bag deployed, that it would have done Mr. McPhail a bit of good, do you?

A: No, sir. It may have, I don't know, but the impact was severe, and I don't know whether it would have helped him or not.

Q: But you don't intend to give an opinion to that effect, right?

A: No, sir.

Q: Okay. That's not your field?

A: No, sir.

Posey Depo. at 58. *See also* Mims Depo. at 39; Lewter Depo. at 219.

In *General Motors Corp. v. Edwards*, 482 So.2d 1176 (1985), the Supreme Court of Alabama directly addressed the "crashworthiness" or second-collision doctrine, which is applicable to plaintiff's air bag claim. In sum, the Court held that:

a cause of action does exist against an automobile manufacturer where it is alleged that an automobile manufactured by it was defective, and was involved in an accident, and that the defect, although not causing the accident to occur, contributed to the injuries sustained therein.

482 So.2d at 1191. Without question, experts for both sides agree that the nondeployment of the driver's air bag did not contribute to the injuries sustained by McPhail. Thus, plaintiff's air bag crashworthiness claim fails in light *Edwards* and defendants are entitled to summary judgment as to the air bag claim.

### 3. Passenger Compartment

Plaintiff has moved for summary judgment on the passenger compartment defect allegation (Count One).[7] See Docu-

its entirety: "Plaintiff alleges that the death of David Harry McPhail was the direct and

ments 39 and 40. Plaintiff alleges that the 1994 Mitsubishi Galant does not meet federal side impact standards, specifically those set forth in Federal Motor Vehicle Safety Standard No. 214, and, that this constitutes negligence *per se*, entitling plaintiff to summary judgment on Count One. For all of the reasons thoroughly set forth in "defendants' memorandum brief in opposition to plaintiff's motion for summary judgment" and the attached documentation (Doc. 48), the court finds plaintiff's contention wholly without merit. The undisputed evidence shows that the 1994 Mitsubishi Galant meets the federal side impact standards set forth in FMVSS 214. Accordingly, plaintiff's motion for summary judgment (Doc. 39) is due to be, and hereby is, **DENIED.**

 The court will now discuss defendants' motion for summary judgment as it relates to the passenger compartment of the 1994 Galant. Plaintiff maintains that the vehicle was defective because "the passenger compartment was not sufficient to prevent collapse." Complaint at 2. Plaintiff has alleged, at various times throughout his litigation, that the 1994 Galant did not meet federal side impact standards and that a weld on the driver's door of the subject vehicle was inadequate. Plaintiff's experts, on the other hand, admit that nothing regarding the integrity of the passenger compartment played any role in either the accident or McPhail's death. Expert Posey, plaintiff's only expert who testified on this subject, stated:

Q: ... you can't sit here today, without doing any analysis, without doing any calculations, testing or anything else, [and] state scientifically that had there been some difference in the welding of this side-door beam to the door structure, that it would not have separated in this accident or that it would have changed in any way the injuries sustained by Mr. McPhail?

proximate result of a combination of two or more of the defects hereinabove described." Since Count Seven is not a substantive count,

A: No, sir.

Plaintiff has presented no evidence, expert or otherwise, to support her claim that the passenger compartment of the subject vehicle was defective. Accordingly, defendants are entitled to summary judgment on Count One. *See Brooks v. Colonial Chevrolet–Buick, Inc.,* 579 So.2d 1328, 1332–33 (Ala.1991).

### 4. Lighting System

Plaintiff alleges in her complaint (Count Two) that when the brakes on the subject vehicle were applied the lights would dim and that this caused the accident. Complaint at 3. However, plaintiff's experts admit that they have no evidence to substantiate such a claim:

Q: ... you don't have any information, based on your analysis and investigation, that there was any problem existing with this car the night of this accident, or that there was even a brake application that would have caused this, right?

A: Correct.

Q: So there is no way, even if you had that information, that you could say that it had any relevance to this accident, right?

A: Correct.

Mims Depo. at 81–82. Posey could not find any evidence of dimming of lights, either:

Q: ... You don't have any evidence that there was any dimming of the lights on Mr. McPhail's vehicle at the time of this accident, do you?

A: No, sir.

Q: Matter of fact, your opinion is that the sole cause of this [accident] was the knuckle fracture right?

plaintiff has effectively moved for summary judgment only as to Count One.

A: That's correct.

Posey Depo. at 77.

Each of plaintiff's experts who testified on the subject conceded that there was no evidence of any dimming of the headlights on the subject vehicle immediately prior to the accident made the basis of this suit. Thus, without any factual basis or expert testimony as to the alleged defect, summary judgment is appropriate on this count as well.

### 5. Steering Mechanism

Plaintiff also alleges that the "steering" on the subject vehicle was defective. However, plaintiff's experts conceded that they had no information or opinions regarding this allegation:

Q: You found no evidence that you could determine the existence of a problem in the steering prior to the accident?

A: As I stated a while ago, I found the steering column had separated. Whether it occurred before the accident or after the accident, I cannot specifically state that.

. . . . .

Q: —were you able to determine any information in [the steering column] that told you that it was in that condition prior to wrapping itself around this tree?

A: No, sir.

Posey Depo. at 91–92. Mims, another one of plaintiff's experts, testified that he did not find any problems with the Galant's steering mechanism:

Q: . . . And you have looked at the steering system in this vehicle?

A: Correct.

Q: And you found no problems with it?

A: To the best of my knowledge.

Mims Depo. at 51–52.

Plaintiff's own experts have no proof of an alleged defect in the steering system on the 1994 Galant. Accordingly, summary judgment for defendants is proper on the steering defect claim.

### 6. Brake System

Finally, plaintiff alleges that the brake system failed, causing McPhail's accident. Complaint at 4. Again, plaintiff's own experts have testified that they have no proof of any alleged brake failure.

Q: Do you have any evidence that there was any problem with the antilock brake system?

A: No, no, not to my knowledge.

Q: You don't even have any evidence that there was any braking attempted by Mr. McPhail the night of the accident, do you?

A: No, sir.

Mims Depo. at 79. *See also supra* note 4 and accompanying text; Posey Depo. at 85. Thus, summary judgment in favor of defendants will be granted as to the brake allegation.

### B. Other Matters

### 1. Breach of Implied Warranty

■ In Count Nine of her complaint, plaintiff contends that these six alleged defects also amount to breaches of the implied warranty of merchantability.[8] In *Geohagan v. General Motors Corporation,* 291 Ala. 167, 279 So.2d 436 (1973), the Supreme Court of Alabama held that "no contractual cause of action for wrongful death is created by our Uniform Commercial Code arising from a breach of warran-

---

**8.** Defendants contend that the standard applied to an implied warranty of merchantability claim is identical to that of the AEMLD and, therefore, that they are entitled to summary judgment on the merchantability claim because plaintiff cannot make out a case under the AEMLD. *Ex Parte Morrison's Cafeteria of Montgomery, Inc.,* 431 So.2d 975, 978

(Ala.1983), is cited for this proposition. The holding in *Ex Parte Morrison's* that the standard in an implied warranty of merchantability claim is identical to that of an AEMLD claim is specifically limited to cases relating to food. Therefore, this argument is without merit.

ty, and that actions for wrongful death can arise in this state and be processed only under our wrongful death acts." Plaintiff is suing for the wrongful death of her son. Under the rule of *Geohagan,* plaintiff has no cause of action for breach of the implied warranty of merchantability. Accordingly, summary judgment in favor of defendants is due on Count Nine of the complaint.

### 2. Injunctive Relief

In Count Eleven of the complaint, plaintiff requests an injunction regarding the storage and testing of the subject vehicle, the 1994 Mitsubishi Galant driven by McPhail. Plaintiff has not pursued this relief since the filing of the "joint motion and stipulation for testing of the subject vehicle" (Doc. 25); and, neither party has addressed Count Eleven in their briefing of the summary judgment motions. Because the parties themselves have resolved the concerns raised in Count Eleven and because plaintiff has not pursed her request for injunctive relief, summary judgment in favor of defendants and against plaintiff is due on Count Eleven of the complaint.

### IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment (Doc. 39) is hereby **DENIED,** and defendants' motion for summary judgment (Doc. 37) is hereby **GRANTED.**