These wrongful death cases arise out of a boating accident that occurred on September 1, 1986, on Bear Creek Lake in Northwest Alabama. The administrators of the estates of James E. Stidham and Larry Randal ("Randy") Veal appeal judgments on jury verdicts of $15,000 each against Teleflex, Inc., the manufacturer of the steering system on the boat in question, and judgments in favor of Mercury Marine, a division of Brunswick Corporation, successor to Maidencraft Mercury Marine, the manufacturer of the motor and the propeller, and Marine Group, Inc., the manufacturer of the bass boat involved in the accident.
On September 1, 1986, James E. Stidham and Randy Veal, who was partially paralyzed, were passengers in a bass boat owned and operated by Harold Frederick. The three men were planning to do some bass fishing on Bear Creek Lake, and were heading for their fishing spot when, the plaintiffs say, the steering system on the bass boat broke, causing the boat to begin "end swapping." All three of the men were thrown from the boat, and the boat began to move in a tight circle at a very slow rate of speed. Veal, who was not wearing a life jacket, drowned, and Stidham, the plaintiffs say, was decapitated by the propeller of the motor. Frederick was not harmed, and was rescued by someone in a nearby boat.
The administrators of the decedents' estates filed wrongful death suits against Teleflex, Inc., Mercury Marine, and Marine Group, Inc., alleging liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), negligence and wantonness.[1] The trial judge refused to charge the jury with regard to negligence or wantonness, but did instruct the jury as to the AEMLD. The jury returned verdicts in favor of the decedents' estates and against Teleflex in the amount of $15,000 each, and verdicts in favor of the other defendants.
The record indicates that Frederick bought the boat in question from Dr. Jack Langston, who had made several alterations to it in order to increase its speed. Langston had installed a "jack plate" on the back of the boat that enabled him to raise the motor on the boat, and, later, he had replaced the jack plate with a piece of wood and aluminum that allowed the motor to be lifted even higher. The appellees contend that these alterations were dangerous because, they say, when the engine was tilted forward it interfered with the steering system, which Langston also had installed himself.[2]
The steering system on the boat consisted of two steering cables, each capable of steering the boat independently of the other. Prior to the accident in question, one of the steering cables had become inoperative; the plaintiffs say this was because of corrosion due to ultraviolet degradation of the cable. The bracket holding the second steering cable in place had, at some point, been broken, but the cable was still working. Frederick had not had the broken bracket replaced; instead, he had simply had it welded back together. When the accident occurred, Frederick was making a turn in the boat when, a witness said, a "small explosion, like a shotgun," occurred, evidently resulting from the breaking of the welded bracket; the breaking of the bracket rendered the second steering cable inoperative. The passengers were thrown *Page 190 
overboard, resulting in the deaths of Stidham and Veal. The plaintiffs contend that if the first steering cable had been functional, the accident would not have happened; therefore, they argue, its failure was a proximate cause of the accident. Teleflex contends that the accident did not occur as a result of corrosion of the inner core of the inoperative steering cable. Instead, it claims that a bend found in the first cable after the accident occurred during the accident because, Teleflex argues, the type of bend in the cable was inconsistent with corrosion; however, Teleflex submits, the bend was consistent with the boat's having hit a submerged log.
First, the plaintiffs contend that the trial judge erred when he instructed the jury only with regard to liability under the AEMLD and refused to instruct the jury as to negligence and wantonness. In Casrell v. Altec Industries, Inc.,335 So.2d 128, 134 (Ala. 1976), we stated that the AEMLD is a fault-based concept and that "a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, [is committing] negligence as a matter of law." Casrell, at 132. We further stated:
 "We observe that legal scholars and courts have had difficulty with theories of negligence and strict tort liability in defective design cases. Are they one and the same? (For a historical collection of cases and writings on the subject of strict tort liability, see Seattle-First National Bank v. Tabert, 86 Wn.2d 145, 542 P.2d 774
[1975].)
 "In Balido v. Improved Machinery, Inc., 29 Cal.App.3d 633, 105 Cal.Rptr. 890 (1972), the California Court of Appeals, Second District, said:
 " ' "* * * Strict liability for deficient design of a product (as differentiated from defective manufacture or defective composition) is premised on a finding that the product was unreasonably dangerous for its intended use, and in turn, the unreasonableness of the danger must necessarily be derived from the state of the art at the time of design. (Thompson v. Package Machinery Co., 22 Cal.App.3d 188, 19192, 99 Cal.Rptr. 281.) A danger is unreasonable when it is foreseeable, and the manufacturer's ability, actual, constructive, or potential, to forestall unreasonable danger is the measure of its duty in the design of its product. A manufacturer's failure to achieve its full potential in design and thereby forestall unreasonable danger forms the basis for its strict liability in tort. It is a liability whose essence parallels the lack of due care that is the essence of its liability for negligence. It may be seen, therefore, that in cases involving deficient design, foreseeability is merely scienter under another name. Since the issue is whether Improved [defendant] designed and put into circulation a product unreasonably dangerous for use and since the unreasonableness of the danger must be determined by the potential available to the designer at the time of design, it is apparent that the strict liability and negligence claims merge. * * *" '
 "Cf. Roach v. Kononen [269 Or. 457], 525 P.2d 125
(Ore. 1974), quoting this case.
 "The historical and traditional purpose of tort law has been to protect persons against unreasonable risks. The only real difference between strict tort liability and the traditional negligence theory in products liability cases is that those courts which have adopted the rule of strict liability look to the dangerous characteristics of the end product, rather than the methods or processes by which it was produced. This represents a shift in emphasis from the manufacturer's, or seller's, conduct to the performance of his product. However, the results are the same, viz., the defendants must pay the consequences of placing an unreasonably dangerous or defective product on the market. If a product is unreasonably dangerous, it is necessarily defective, and the consumer should not be required to prove defectiveness as a separate matter." *Page 191 
Casrell v. Altec Industries, Inc., 335 So.2d at 131.
 "In other words, the fault or negligence of the defendant is that he has conducted himself in a negligent manner by placing a product on the market causing personal injury or property damage, when used to its intended purpose."
Casrell, supra, at 132. The substance of the complaint against Teleflex was that it placed into the stream of commerce a product that was unreasonably dangerous for its intended use. This is a claim under the AEMLD, and the trial court did not err in refusing to charge the jury with regard to negligence and wantonness.
With regard to the claims against Mercury Marine, the successor to Maidencraft, Inc., which manufactured the motor and propeller in question, Stidham's estate claims that the trial court erred in refusing to charge the jury on negligence and wantonness. The plaintiffs contend that the motor decapitated Stidham after he was thrown overboard, and that the use of propeller guards would have saved his life. The plaintiffs contend that because there were several patents available for propeller guards, Mercury Marine was negligent or wanton in failing to utilize them on its boats. The sole question at issue, according to the plaintiffs, was whether propeller guards were feasible at the time of the accident. If so, then they contend that Mercury Marine was either negligent or wanton in failing to utilize them and this claim should have been submitted to the jury. We disagree. For the reasons stated above, the trial court did not err in refusing to charge the jury with regard to negligence and wantonness; in fact, in light of Beech v. Outboard Marine Corp., 584 So.2d 447
(Ala. 1991), the trial court should not have submitted the AEMLD charge to the jury with regard to Mercury Marine. In Beech
supra, we stated:
 "At the risk of being repetitious, we hold, as the Eleventh Circuit Court of Appeals did in Elliott [v. Brunswick Corp., 903 F.2d 1505 (11th Cir. 1990)], that General Motors Corp. v. Edwards 482 So.2d 1176 (Ala. 1985), is determinative of the questions presented to us by the District Court. In deciding whether a cause of action for failure to provide a propeller guard exists in Alabama, we must answer this dispositive question: Is an outboard motor, on a pleasure boat and lacking a propeller guard, 'defective' as that term is defined under Alabama law? . . . .
 "We decline to hold, as a matter of law, that simply because 'a feasible propeller guard could have been designed by a proper use of the manufacturer's resources' that an 'alternative design' existed. Furthermore, a propeller guard that 'arguably creat[es] other dangers' is not a 'safer' design within the meaning of General Motors Corp. v. Edwards. We also note that, according to present industry standards, the evidence does not conclusively show that such propeller guards are 'practical. . . .'
 "In conclusion, . . . we hold that there is no cause of action, under either the AEMLD or negligence or wantonness theories, for failure to provide propeller guards on pleasure boat outboard motors."
Beech v. Outboard Marine Corp., supra, 584 So.2d at 450. (Emphasis added.) For the reasons stated above, the trial court did not err in refusing to charge the jury with regard to negligence and wantonness; in fact, in light of Beech, the trial court should not have submitted the AEMLD charge to the jury with regard to Mercury Marine.
The plaintiffs also argue that the trial court improperly coerced a verdict from the jury. It is their contention that the trial court had been told that the jurors were hopelessly deadlocked, and, yet, continued to send them back for further deliberation. The trial judge reinstructed the jurors with regard to the law and encouraged them to reach a verdict on several occasions, and the plaintiffs suggest that the language he used was tantamount to coercion.
The appellees, on the other hand, contend that the trial court's "Allen *Page 192 
charges"[3] do not warrant a reversal in this case. We agree. In this case, the jurors were never instructed that they had to return a verdict; rather, they were merely encouraged to continue deliberating as long as there was a possibility that they could reach an agreement on the case. The jurors were instructed "not to violate [their] conscience in any way," and we find no merit in the argument that the verdict was coerced.
We also find no merit in the plaintiffs' argument that the bass boat was defectively designed, and we will not address that argument here.
For the foregoing reasons, the judgments in these cases are hereby affirmed.
88-1605, AFFIRMED.
88-1606, AFFIRMED.
88-1661, AFFIRMED.
88-1662, AFFIRMED.
MADDOX, ALMON, SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
HORNSBY, C.J., concurs in the result.
[1] Veal's estate asserted no claim against Mercury Marine.
[2] Langston, prior to selling the boat to Frederick, had also put black tape around the ends of the steering cables.
[3] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154,41 L.Ed. 528 (1896).