Brenda D. TILLMAN, as Executrix Under the Last Will and Testament of Kalen Oliver Tillman, Sr., Deceased, Plaintiff,

v.

**REYNOLDS TOBACCO COMPANY, et al., Defendant.**

No. Civ.A. 98–0748–BH–M.

United States District Court,
S.D. Alabama,
Southern Division.

Jan. 27, 2000.

Ross Diamond III, Mobile, AL, Stuart Yeldell Luckie, Diamond, Hasser & Frost, Mobile, AL, Jere L. Beasley, Robert Graham Esdale Jr., Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, AL, Floyd L. Matthews, Jr., Gregory H. Maxwell, Spohrer, Wilner, Maxwell, Jacksonville, FL, for Plaintiff.

Joseph P.H. Babington, John T. Dukes, Helmsing, Sims & Leach, Mobile, AL, Thomas D. Schroeder, Marilyn R. Forbes, Womble, Carlyle, Sandridge & Rice, BB & T Financial Center, Winston–Salem, NC, Samuel H. Franklin, William H. Brooks, Stephen J. Rowe, Lightfoot, Franklin & White, Birmingham, AL, for Defendant.

## ORDER

HAND, Senior District Judge.

This action is before the Court on motions filed by the defendant, R.J. Reynolds Tobacco Company (Reynolds) to dismiss (Doc. 62) and to strike certain portions of plaintiff's amended complaint (Doc. 64). Upon consideration of these motions, plaintiff's response in opposition thereto (Doc. 69), Reynolds reply and supplementation (Docs. 72, 73 and 76), and all pertinent portions of the record, the Court concludes that Reynolds' motion to dismiss is due to be granted and that the motion to strike is thus moot.

As summarized in part by the defendant, plaintiff's decedent, Kalen Oliver Tillman, Sr., filed this action in the Circuit Court of

Mobile County, Alabama, on June 18, 1998, alleging that he developed lung cancer as a result of smoking Winston cigarettes. The original complaint named Reynolds, R.J.R. Nabisco, Inc., two retailers and five individual Reynolds' employees as defendants. The defendants removed the case to this Court on July 20, 1998. This Court dismissed the two retailers and five individual defendants on the ground that they had been fraudulently joined and consequently denied plaintiff's motion to remand which had been predicated on a lack of diversity jurisdiction. On September 24, 1998, R.J.R. Nabisco, Inc. was voluntarily dismissed, leaving Reynolds as the sole defendant.

After Mr. Tillman's death, Brenda D. Tillman was substituted as plaintiff and filed an amended complaint on July 14, 1999 (Doc. 60). Although the amended complaint exceeded not only the Court's Order of April 19, 1999, but the scope contemplated by Fed.R.Civ.P. 25 with regard to the substitution of parties and was filed well beyond the January 29, 1999, deadline for amending the pleadings, the Court accepted this amended pleading on July 19, 1999.

The amended complaint asserts claims against Reynolds in eight counts. In Count One, plaintiff asserts a claim based on the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). (Amended Complaint at ¶ 41). In Count Two, plaintiff claims that defendant "negligently designed, manufactured, and/or marketed or sold cigarettes that were unreasonably dangerous to consumers." (Amended Complaint at ¶ 45). Similarly, in Count Three, plaintiff claims that defendant "wantonly designed, manufactured, and/or marketed or sold cigarettes that were unreasonably dangerous to consumers." (Amended Complaint at ¶ 48). In Count Four, plaintiff alleges that the defendant was among those who "participated in a civil conspiracy to commit fraud by commission and by omission" in that defendant and the co-conspirators suppressed the dangers of cigarette smoking from the public, press, government as well as the scientific and medical professions. (Amended Complaint at ¶¶ 51–61). Counts Five through Eight simply contain derivative wrongful death claims based on the causes of action asserted in the preceding counts.

NEGLIGENCE AND WANTONNESS

■ The Court first agrees that Counts Two and Three of the Amended Complaint are due to be dismissed because, in these counts, plaintiff asserts causes of action for negligence and wantonness which, under Alabama law, merge into plaintiff's claim under the AEMLD. *See, Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F.Supp. 1213, 1217–18 (S.D.Ala.1998) ("[N]o separate action for negligence will lie when a plaintiff claims he is injured by a defective and unreasonably dangerous product [inasmuch as, under AEMLD,] the strict liability and negligence claims merge."); *Veal v. Teleflex, Inc.*, 586 So.2d 188, 191 (Ala.1991) ("[T]he fault or negligence of the defendant is that he conducted himself in a negligent manner by placing a product on the market causing personal injury or property damage, when used to its intended purpose ... This is a claim under the AEMLD, and the trial court did not err in refusing to charge the jury with regard to negligence and wantonness."); *Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 132–33 (Ala.1976) (Alabama retained a tort theory of liability in the AEMLD emphasizing that "[t]he care with which a defective product is manufactured or sold is now immaterial, when given the allegation and proof of injury resulting proximately from the product's defective condition.").

Although plaintiff contends that "[s]cores of [product liability] cases have been decided by the Alabama Supreme Court, in which the court had dealt with each cause of action separately," each case cited by the plaintiff is inapposite. Plaintiff's Brief in Opposition to Motion to Dismiss at 2–3. Most of the cases relied upon by the plaintiff relate essentially to a claim

of "negligent-failure-to-warn" and not a claim of negligent or wanton design. *Cf., Yarbrough v. Sears, Roebuck and Co.,* 628 So.2d 478, 481 and 482–83 (Ala.1993) (With respect to an "unreasonably dangerous" product, "danger may be obviated by adequate warning"; and "[a] negligent-failure-to-adequately-warn case cannot be submitted to a jury unless there is some evidence that the allegedly inadequate warning would have been read and heeded and would have kept the accident from occurring."); *Clarke Industries, Inc. v. Home Indemnity Co.,* 591 So.2d 458, 461–62 (Ala. 1991) (Substantial evidence that, had there been a warning, the injured party would have read and heeded the warning, precluded a directed verdict or a judgment notwithstanding a verdict on the "negligent failure to warn claim at issue."); *Deere & Co. v. Grose,* 586 So.2d 196, 198 (Ala.1991) (Plaintiff "produced no evidence at all that an 'adequate' warning would have been read and heeded and would have prevented the accident [and, consequently,] the trial court erred when it denied [defendant's] motion for a directed verdict on [plaintiff's 'negligent-failure-to-warn-adequately claim'].")); *Rutledge v. Arrow Aluminum Industries, Inc.,* 733 So.2d 412, 417 (1998) (The only negligence and wantonness claims asserted were for "negligent or wanton failure to warn."). In *Ford Motor Co. v. Burdeshaw,* 661 So.2d 236, 238 (Ala.1995), the plaintiff "dropped her AEMLD claim, and the only theory submitted to the jury was common law negligence." The issue in *Mobile Infirmary v. Delchamps,* 642 So.2d 954, 955 (Ala.1994), was whether the limitations provisions of the Alabama Medical Liability Act, Ala.Code § 6–5–482, applied and/or barred "Delchamps's AEMLD, negligence and breach of warranty claims arising out of the surgical placement of temporomandibular implant in her jaw." Finally, there is no indication that the court in *Flagstar Enterprises, Inc. v. Davis,* 709 So.2d 1132 (Ala.1997), was called upon to do more than examine the sufficiency of the evidence presented by the plaintiff. Not one

Alabama court in the cases cited by the plaintiff herein has held that a negligent or wanton design claim does not merge into plaintiff's AEMLD claim or has otherwise overruled the clear edict of *Veal* that a claim asserting that the defendant "placed into the stream of commerce a product that was unreasonably dangerous for its intended use" is nothing more or less than "a claim under the AEMLD" and it is therefore proper to refuse to submit to the jury separate charges on negligent or wanton design of that same product. *Veal,* 586 So.2d at 191.

### AEMLD

 For the reasons set forth by Reynolds in its Memorandum (Doc. 63),[1] as supplemented, the Court further concludes that plaintiff's AEMLD claim is due to be dismissed. In order to establish liability under the AEMLD, plaintiff must show that "[h]e suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer." *Hawkins v. Montgomery Industries International, Inc.,* 536 So.2d 922, 925 (Ala.1988). As emphasized in *Casrell,* the true test for liability under the AEMLD is not whether the product is "defective" but whether it is "unreasonably dangerous." *Casrell,* 335 So.2d at 133. According to the Alabama Supreme Court, a product "either is or is not 'unreasonably dangerous' to a person who should be expected to be exposed to it" and, if the product is unreasonably dangerous, "it makes no difference whether it is dangerous by design or defect." *Id.* The *Casrell* court established a consumer expectations test for whether a product is unreasonably dangerous and held that "the article sold must be dangerous to an extent beyond that which would be contemplated by the **ordinary** consumer who purchased it with the ordinary knowledge common to the community as to its characteristics." *Id.* (emphasis added).

---

1. See, Reynolds' Memorandum (Doc. 63) at 6–13.

Thus, under Alabama law, a product is not "unreasonably dangerous" unless it fails to "meet the reasonable safety expectations of an 'ordinary consumer,' that is, an objective 'ordinary consumer' possessed of the ordinary **knowledge common in the community.**" *Deere & Co.*, 586 So.2d at 198 (emphasis added). Similarly, " '[d]efective' is interpreted to mean the product does not meet the reasonable expectations of an ordinary consumer as to its safety." *Casrell*, 335 So.2d at 133.

Although under Alabama law a jury ordinarily evaluates a plaintiff's claims that a product is defective, there are instances where summary judgment is clearly appropriate. *See e.g., Elliott v. Brunswick Corp.*, 903 F.2d 1505, 1507 (11th Cir.1990). This is indeed true when an ordinary consumer understands or should understand that a product is inherently dangerous. "Some products by their nature (or, in modern parlance, by their conscious design), place both users and bystanders in some measure of danger. A knife or an axe may cut persons, as well as their intended targets. Fish hooks can wound; *saws can maim*, ... Yet ... we do not hold manufacturers liable simply because the use of their products involves some risk[.]" *Id.* (emphasis added).

■ Moreover, the Alabama Supreme Court, in connection with its consumer's expectations test for whether a product is unreasonably dangerous, has expressly adopted comment i of § 402A of the Restatement (Second) of Torts. *See, Elliott v. Brunswick Corp.*, 903 F.2d 1505, 1507, *citing, Casrell*, 335 So.2d at 133. This comment cites tobacco as a paradigmatic example of a product that is not unreasonably dangerous, stating in part: "Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful." Comment i, § 402A of the Restatement (Second) of Torts.[2] The Court must acknowledge that Dean Page Keeton, who served as an Advisor to the American Law Institute which adopted the Restatement, explicitly asserted under Comment i: "liability should not be extended to makers for harm resulting from unavoidable injurious effects of highly desirable products, such as good penicillin, good cigarettes, or good whiskey." Keeton, *Products Liability and the Meaning of Defect*, 5 St. Mary's L.J. 30, 34 (1973). The Court therefore agrees that, in short, cigarettes are by design and nature excluded from liability under the AEMLD.

Plaintiff's efforts to characterize defendant's position as "nothing more than a jury argument" (Plaintiff's Brief in Opposition at 11) is unavailing in light of the wealth of judicial precedence recognizing that "[t]he dangers of cigarette smoking have been a matter of public knowledge since at least January 1, 1966, when the first government-mandated warning labels appeared on cigarette packages." *Wakeland*, 996 F.Supp. at 1219. *See also, Toole*

---

2. Comment i to § 402A of the Restatement (Second) of Torts reads in full:

*Unreasonably dangerous.* The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is deadly to diabetics, and castor oil found use under Mussolini as an instrument of torture. This is not what is meant by "unreasonably dangerous" in this Section. *The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.* Good whisky is not unreasonably dangerous merely because it will make people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. *Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful;* but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.

(Emphasis added).

*v. Brown & Williamson Tobacco Corp.,* 980 F.Supp. 419, 425 (N.D.Ala.1997) ("[T]he dangers of tobacco have been 'ordinary knowledge common to the community' for many years."); *Report of the Task Force on Tobacco Litigation,* 27 Cumb. L.Rev. 575, 590 (1997) ("Virtually every smoker in Alabama has known (or at least should have known) for many years that cigarettes are dangerous."). *See also, Arnold v. R.J. Reynolds Tobacco Co.,* 956 F.Supp. 110, 115 n. 8 (D.R.I.1997) ("[T]he dangers of cigarette smoking and the addictive nature of nicotine have become common knowledge."); *Lonkowski v. R.J. Reynolds Tobacco Co.,* 1996 WL 888182, at *7 n. 13 (W.D.La.1996) (As early as 1952, "knowledge of the dangers of cigarettes was widespread."). The United States Supreme Court, as far back as 1900, acknowledged:

> Cigarettes do not seem until recently to have attracted the attention of the public as more injurious than other forms of tobacco; nor are we now prepared to take judicial notice of any special injury resulting from their use or to indorse the opinion of the supreme court of Tennessee that 'they are inherently bad and bad only.' At the same time we should be shutting our eyes to what is constantly passing before them were we to affect an ignorance of the fact that a belief in their deleterious effects, particularly upon young people, has become very general, and that communications are constantly finding their way into the public press denouncing their use as fraught with great danger to the youth of both sexes. Without undertaking to affirm or deny their evil effects, we think it within the province of the legislature to say how far they may be sold, or to prohibit their sale entirely ...

*Austin v. Tennessee,* 179 U.S. 343, 348–49, 21 S.Ct. 132, 134, 45 L.Ed. 224 (1900). By 1921, fourteen states had banned the production or sale of tobacco, which both confirmed and reinforced the widespread public belief that smoking entails health risks.[3]

Alabama passed its first statute restricting the use of cigarettes by minors in 1896. Task Force, *supra,* at 591. In the period between 1920 and 1962, a wide range of epidemiological and laboratory studies on the health hazards of smoking were circulated; "so many that by 1962 'there were more than 7,000 publications examining the relationship between smoking and health.'" *Id.* at 592. Daily newspapers, including those widely disseminated to Alabama residents, have also reported on the health risks of smoking. *See e.g.,* Alton L. Blakslee, "Cigarette Smokers Die Sooner than Other Men, 50–70, Cancer Society Reports," *Birmingham News,* June 21, 1954, at 20.

■ Finally, even if cigarettes could be found to be "unreasonably dangerous" despite the widespread and longstanding common knowledge regarding the risks of smoking to ones' health, plaintiff could not, for the reasons stated in Reynolds' Memorandum at 12–13, state a claim under the AEMLD because liability is obviated by an adequate warning as a matter of law. *See e.g., Toole,* 980 F.Supp. at 425 ("Without question, the federally mandated warning on packages of cigarettes for the last thirty years has adequately warned the public of the dangers of tobacco smoking" which constituted one basis for the dismissal of plaintiff's AEMLD claims against the manufacturer of loose tobacco.) *See also., Casrell,* 335 So.2d at 133 (Even if a product is not safe when used as intended, the "danger may be obviated by an adequate warning."); and *Ex parte Chevron Chemical Co.,* 720 So.2d 922, 926–28 (Ala.1998) (Upheld summary judgment for defendant on AEMLD claim because the dangers of the product were commonly known and the public adequately warned).

## CONSPIRACY

■ Likewise, for the reasons stated in Reynolds' Memorandum (Doc. 63) at 13–24 and Reply (Doc. 72) at 6–11, the Court concludes that plaintiff fails to state a

---

**3.** See, Reynolds' Memorandum (Doc. 63) at n. 3.

claim for conspiracy and such claim is due to be dismissed. The Court agrees that the gist of the allegation in Count Four of the Complaint, even as amended, sound in fraudulent concealment or fraudulent misrepresentation, whatever plaintiff belatedly chooses to call the conspiracy count. If the allegations do not state a cause of action for fraud, then the conspiracy count fails for lack of an underlying tort. Plaintiff's contention that Alabama recognizes civil conspiracy as a substantive tort (Plaintiff's Brief at 14) misses the point. Civil conspiracy under Alabama law still requires an underlying wrongful cause of action.

■ Despite plaintiff's characterizations, the complaint simply fails to state any cause of action for conspiracy. The factual allegations in the Amended Complaint are insufficient to establish that Reynolds combined with anyone "to do (a) something that is unlawful, oppressive or immoral; or (b) something that is not unlawful, oppressive or immoral, by unlawful, oppressive or immoral means; or (c) something that is unlawful, oppressive or immoral, by unlawful, oppressive or immoral means." Plaintiff's Brief at 14, *quoting, Snyder v. Faget,* 295 Ala. 197, 326 So.2d 113, 117 (1976). The manufacture of cigarettes is neither illegal nor oppressive or immoral under the law. The risks of smoking have been addressed at length by the medical profession and broad sweeping warnings have been presented to the general public since at least 1966. Thus plaintiff has failed to identify the utilization of any improper means by which Reynolds could be held accountable for the injury alleged to have been sustained by Mr. Tillman.

In this case, it is undisputed that Mr. Tillman began smoking in 1968, over two years after the Surgeon General's warnings were mandated and following the Surgeon General's 1964 Report on smoking. As stated previously, the risks of smoking have been recognized in a line of well reasoned cases as commonly known since at least the time the federal warnings were mandated. Consequently, the Court agrees that plaintiff's claims that Mr. Tillman was the victim of fraud as to the health effects of smoking—i.e., that he reasonably relied on any alleged fraud—is simply both contrary to common sense and insufficient in light of the applicability of the "reasonable man" standard in the context of a products liability action.

Additionally, as this Court held in *Wakeland* with respect to concealment claims against tobacco distributors, "conspicuous warnings regarding the dangers of cigarette smoking have appeared on cigarette packages since January 1, 1966, the effective date of the Federal Cigarette Labeling and Advertisement Act of 1965." *Wakeland,* 996 F.Supp. at 1221–22. Thus, "[a]ny suppression claim of the nature found in the complaint is barred by the two-year statute of limitations imposed by Alabama law" because the statute of limitations begins to run when a plaintiff has knowledge of facts that would put a reasonable person on notice of fraud. Mr. Tillman did not even start smoking until after the public disclosures as to smoking and health which clearly provided the public with knowledge and awareness as to its risks. Consequently, Mr. Tillman cannot, as a matter of law, be said to have reasonably relied on any alleged fraud by Reynolds. Moreover, the Court agrees that plaintiff has failed to allege anything that would indicate, reasonably or otherwise, that Reynolds prevented Mr. Tillman from discovering any alleged fraud. Even a general allegation that the fraud was not discovered until a particular date does not provide the specificity required to bring the claim within the statute governing the accrual of claims based on fraud. *Amason v. First State Bank of Lineville,* 369 So.2d 547, 550 (Ala.1979) (It is plaintiff's burden to show that he has complied with the statute.).

## PREEMPTION

■ Finally, plaintiff has conceded that post-1969 claims related to the adequacy

of the warnings about the effect of smoking on ones' health are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331, *et. seq.* (1982). Plaintiff's Brief at 16–17. Although plaintiff argues that summary judgment is precluded because Reynolds "has **not yet proven it complied with the cigarette labeling acts**" (Plaintiff's Brief at 20; emphasis in original), such a contention is specious. The Amended Complaint contains no allegation, nor could it, that Reynolds failed to comply with the applicable labeling acts. For the reasons set forth in Reynolds' Reply Brief at 12–13, the Court concludes that the "advocacy statements" that plaintiff identifies and characterizes as falling outside the preemptive effect of the labeling acts are insufficient as a matter of law to serve as the basis of a lawsuit. None of these alleged statements could, as a matter of law, support a fraud claim in this lung cancer case. In *Cantley v. Lorillard Tobacco Company, Inc.*, 681 So.2d 1057 (Ala.1996), the first appeal taken in that case, the Court held that plaintiff's fraudulent suppression claim was "clearly" preempted by federal law:

> Because [15 U.S.C.] § 1334(b) "preempts … the imposition of state-law obligations 'with respect to the advertising or promotion' of cigarettes[,]" claims that a cigarette maker concealed material facts are preempted insofar as those claims rely on a state law duty to disclose such facts through advertising or promotion methods. *Cipollone [v. Liggett Group ]*, 505 U.S. [504,] 528, 112 S.Ct. [2608,] 2623–24[, 120 L.Ed.2d 407 (1992) ]. A fraudulent suppression claim against a cigarette maker seeking relief based on smoking-related illness or death can avoid federal preemption only if the claim is based "on a state law duty to disclose [the allegedly concealed material] facts through channels of communication other than advertising or promotion." *Id.*
>
> **[Plaintiff's] fraudulent suppression claim merely alleged generally that the defendants had failed to inform [decedent] of the risks of smoking.**

> **Because manufacturers in the position of R.J. Reynolds and Lorillard can ordinarily communicate directly with consumers like [decedent] only through "advertising or promotion" channels of communication, we must conclude that [plaintiff's] fraudulent suppression claims, as pleaded are inevitably based upon a "state law duty to disclose … facts through … advertising or promotion" channels of communication and, therefore, they are preempted.**

681 So.2d at 1061 (emphasis added). *See also, Sonnenreich v. Philip Morris*, 929 F.Supp. 416, 419 (S.D.Fla.1996) (claims against tobacco companies based on information in non-advertising and promotional means such as public service messages, seminars, direct mail-outs, public advocacy and lobbying are preempted by federal labeling act).

### CONCLUSION

For the reasons stated above, it is **ORDERED, ADJUDGED** and **DECREED** that Reynolds' motion to dismiss (Doc. 62) be and is hereby **GRANTED** and this action is therefore **DISMISSED** for failure to state a claim upon which relief can be granted. Reynolds' motion to strike (Doc. 64) is **MOOT**.