50 So.3d 458 (2010)
Joe F. GARRIE
v.
SUMMIT TREESTANDS, LLC.
2080164.
Court of Civil Appeals of Alabama.
April 30, 2010.
*461 Thomas P. Willingham and Mary Leah Miller of Alvis & Willingham, LLP, Birmingham, for appellant.
James R. Shaw, Chris S. Rodgers, Jacob W. Crawford, and Lauren E. Davis of Huie, Fernambucq & Stewart, LLP, Birmingham, for appellee.

On Application for Rehearing
BRYAN, Judge.
This court's opinion of August 21, 2009, is withdrawn, and the following is substituted therefor.
The plaintiff, Joe F. Garrie, appeals from a summary judgment entered in favor of the defendant, Summit Treestands, LLC ("Summit"), in this action seeking damages for injuries sustained when Garrie fell from a tree stand manufactured by Summit.

Facts
On January 31, 2003, Garrie was hunting in a 1998 model "Viper" tree stand manufactured by Summit. Garrie's son had purchased the tree stand for Garrie at a store owned by Wiley Outdoor Sports, Inc. The tree stand is a two-part "climbing" tree stand, i.e., the hunter uses the tree stand to climb the tree from which he hunts. The top half of the tree stand appears to consist of the seat used by the hunter; the bottom half is the platform on which the hunter's feet rest.[1] The top half and the bottom half of the tree stand are connected by a rope or tether. The tree stand appears to be of the type in which each half of the tree stand attaches to the tree by use of an adjustable part that wraps around the tree. The adjustable part is secured around the tree in such a manner as to allow enough room to maneuver the tree stand up and down the tree while climbing. When the hunter climbs the tree, the platform of the tree stand attaches by straps to the hunter's boots. The straps have rubber bands that fit around the hunter's heels. With the hunter's feet secured to the platform, the hunter climbs up or down the tree by lifting the platform with his feet a short distance either up or down, then applying pressure by pressing down, thus securing the platform to the tree. The top half of the tree stand is operated in a similar fashion.
Garrie's tree stand was equipped with a safety belt designed to prevent falls. On one end, the safety belt fits around the hunter's body somewhere under the hunter's shoulders. The other end of the safety *462 belt attaches to the tree. On the day he fell, Garrie was not using the safety belt. Garrie testified that he used the safety belt for two hunting seasons when he first starting using the tree stand. Garrie stated that he stopped using the safety belt because he had heard stories about hunters "getting smothered to death and hung with [the safety belts]." Garrie also testified that he did not believe the safety belt was designed to be used while climbing up or down the tree with the tree stand.
Garrie testified that, after hunting in his tree stand during the afternoon of January 31, 2003, he began to climb down the tree using the tree stand. Garrie testified that he had climbed down the tree four or five feet when one of his feet became disengaged from the foot strap on the platform. Garrie stated that the tree stand consequently "dropped down on the side." Garrie testified that, while attempting to get his foot back into the foot strap, he slipped and fell to the ground. The fall broke Garrie's back and rendered him paraplegic. Garrie was subsequently treated at DCH Regional Medical Center ("DCH"). The medical records of Garrie's treatment at DCH indicate that he had stated that "he became ill and had a syncopal episode while hunting" on the day he fell.

Procedural History
On December 29, 2004, Garrie sued Summit and Wiley Outdoor Sports, Inc. ("Wiley Outdoor"), alleging (1) claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") for the manufacture and sale of a defective and unreasonably dangerous tree stand, (2) negligence, (3) wantonness, (4) negligent failure to warn, (5) wanton failure to warn, (6) breach of express warranty, and (7) breach of implied warranty of merchantability. Summit and Wiley Outdoor each filed a motion for a summary judgment. In Summit's summary-judgment motion, Summit asserted (1) "that [Garrie] failed to present substantial evidence of a design or manufacturing defect in the tree stand as is required in order to establish a claim under the AEMLD"; (2) "[that Garrie did] not offer substantial evidence of a safer, practical, alternative design as required under the AEMLD"; (3) "[that Garrie] failed to present any expert testimony to support the allegations contained in his complaint"; (4) "[that Summit was] entitled to a judgment as a matter of law as a result of [Garrie's] contributory negligence"; and (5) that Garrie's negligence and wantonness claims were subsumed by his AEMLD claim. Summit supported its summary-judgment motion with various evidentiary materials, including expert testimony indicating that the tree stand is not defective or unreasonably dangerous. Garrie filed a response to Summit's summary-judgment motion, which was supported by various evidentiary materials, including expert testimony indicating that the tree stand is defective and unreasonably dangerous.
The trial court entered a summary judgment in favor of Wiley Outdoor, and the trial court certified that judgment as final, pursuant to Rule 54(b), Ala. R. Civ. P. Garrie did not appeal from that judgment. The trial court subsequently entered a summary judgment in Summit's favor. Garrie filed a postjudgment motion, which was denied by operation of law. Garrie filed a timely appeal to the supreme court, and the supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review
"In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., *463 531 So.2d 860, 862 (Ala.1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is `substantial' if it is of `such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).

Discussion
On appeal, Garrie makes several arguments. We first address Garrie's argument that his negligence and wantonness claims were not subsumed by his AEMLD claim. That is, we must determine whether the negligence, wantonness, and AEMLD claims should be evaluated as separate claims or whether they should be evaluated as a single claim under the AEMLD. As noted, Summit asserted in its summary-judgment motion that Garrie's negligence and wantonness claims were subsumed by his AEMLD claim. In arguing that the negligence and wantonness claims were subsumed by the AEMLD claim, Summit cites Veal v. Teleflex, Inc., 586 So.2d 188 (Ala.1991), and federal cases. However, in Vesta Fire Insurance Corp. v. Milam & Co. Construction, 901 So.2d 84 (Ala.2004), our supreme court addressed Veal and explained that negligence and wantonness claims are not subsumed by an AEMLD claim. The supreme court stated:
"With respect to the trial court's determination that the plaintiffs' negligence and breach-of-warranty claims were subsumed by their AEMLD claims, the trial court's determination might have been supportable under Veal v. Teleflex, Inc., 586 So.2d 188 (Ala.1991), a case that discussed circumstances under which the strict-liability doctrine of the AEMLD might be viewed as imputing negligence to a defendant as a matter of law.6
"More recently, however, and after the entry of the summary judgment for [the defendant], this Court specifically addressed the question whether a negligence claim is subsumed in a AEMLD claim in Tillman v. R.J. Reynolds Tobacco Co., 871 So.2d 28, 34-35 (Ala. 2003):
"`It must be remembered, however, that the AEMLD, as established in Casrell [v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976),] and Atkins [v. American Motors Corp., 335 So.2d 134 (Ala.1976)], is "an example of judicial legislation," not of legislative enactment. Keck v. Dryvit Sys., Inc., 830 So.2d 1, 8 (Ala.2002). This Court warned last year in Keck that "[j]udicial decision-making should not be seen as the opportunity to legislate." 830 So.2d at 8. Alabama remains a common-law state, and therefore common-law tort actions "so far as [they are] not inconsistent with the Constitution, laws and institutions of this *464 state . . . shall continue in force, except as from time to time . . . may be altered or repealed by the Legislature." § 1-3-1, Ala.Code 1975. We will not presume to so define the boundaries of the judicially created AEMLD so that it subsumes the common-law tort actions of negligence and wantonness against the retailer defendants.'
"6 After Veal, a number of cases held that negligence and wantonness claims were subsumed by an AEMLD claim. See, e.g., Brock v. Baxter Healthcare Corp., 96 F.Supp.2d 1352 (S.D.Ala.2000), and Johnson v. General Motors Corp., 82 F.Supp.2d 1326 (S.D.Ala.1997). However, a number of other cases either recognized that the issue had not been finally decided, see Grimes v. General Motors Corp., 205 F.Supp.2d 1292 (M.D.Ala.2002), or permitted negligence and AEMLD claims to coexist under certain circumstances. See, e.g., Flagstar Enters., Inc. v. Davis, 709 So.2d 1132 (Ala.1997)."
Vesta Fire Ins., 901 So.2d at 101-02. Therefore, Garrie's negligence and wantonness claims were not subsumed by his AEMLD claim.
We next address Garrie's arguments concerning his claim under the AEMLD.
"The elements of an AEMLD claim are as follows:
"`"`To establish liability, a plaintiff must show:
"`"`(1) he suffered injury or damage [] to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
"`"`(a) the seller is engaged in the business of selling such a product, and
"`"`(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it [was] sold.'"
"`Yamaha Motor Co. v. Thornton, 579 So.2d 619, 621 (Ala.1991) (quoting Casrell v. Altec Indus., Inc., 335 So.2d 128, 132-33 (Ala.1976)).'"
Tanksley v. ProSoft Automation, Inc., 982 So.2d 1046, 1049-50 (Ala.2007) (quoting Kirk v. Garrett Ford Tractor, Inc., 650 So.2d 865, 866 (Ala.1994)).
"In an AEMLD action, `the plaintiff must affirmatively show that the product was sold with a defect or in a defective condition.' Jordan v. General Motors Corp., 581 So.2d 835, 836-37 (Ala.1991). `Without evidence to support the conclusion that the product was defective and/or unreasonably dangerous when it left the hands of the seller, the burden is not sustained.' Jordan, 581 So.2d at 837. `Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown.' Townsend v. General Motors Corp., 642 So.2d 411, 415 (Ala.1994)."
Tanksley, 982 So.2d at 1051.
Garrie supported his response to Summit's summary-judgment motion with, among other things, the affidavit of Roger E. Davis, a professional engineer. Davis testified that the tree stand is defective and unreasonably dangerous in two respects: (1) it is not equipped with a body harness, but instead is equipped only with a safety belt; and (2) the foot straps of the tree stand are not designed to adequately prevent the platform of the tree stand from dislodging from the hunter's feet. Davis testified:
"The climbing tree stand involved in Mr. Garrie's injury was manufactured . . . with a body belt. A body belt is generally *465 considered a body positioning and fall restraint device, rather than a fall protection device. Body harnesses are generally considered fall protection devices. Body harnesses were in common use at the time the subject tree climbing stand was manufactured and sold.
". . . It is my opinion that the user of a Viper tree stand is not adequately protected from a fall when using the body belt provided. The manufacturer should have equipped the tree stand with a body harness, at minimum, and its failure to do so renders this product defective and unreasonably dangerous.
". . . It is my opinion that the design of the means of attachment for the [platform] portion of the tree stand is not adequate to reliably prevent the [platform] from dislodging, causing the [platform] to fall to the end of its tether. When the user attempts to retrieve and reposition the [platform] after it dislodges, he assumes an unbalanced position which may lead to a fall of the user. A redesign of the means of attachment of the [platform] would more likely than not have prevented this accident.
". . . It is my opinion that the subject Viper Tree Stand was in a defective condition, unreasonably dangerous, because of its design, including those defects outlined above and its failure to incorporate reasonably safe alternative designs as outlined above.
". . . My opinion, which is based upon a reasonable degree of engineering certainty, is that the defective design of the subject Viper tree stand was the proximate cause of Mr. Garrie's accident, and that this accident could have been prevented by incorporating the alternative designs as set forth above."
Our supreme court has stated:
"In order to prove that a product is defective for purposes of the AEMLD, a plaintiff must prove that
"`"a safer, practical, alternative design was available to the manufacturer at the time it manufactured the [product]. The existence of a safer, practical, alternative design must be proved by showing that:
"`"(a) The plaintiff's injuries would have been eliminated or in some way reduced by use of the alternative design; and that
"`"(b) taking into consideration such factors as the intended use of the [product], its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used."'
"Beech v. Outboard Marine Corp., 584 So.2d 447, 450 (Ala.1991) . . ., quoting General Motors Corp. v. Edwards, 482 So.2d 1176, 1191 (Ala.1985), overruled on other grounds, Schwartz v. Volvo North America Corp., 554 So.2d 927 (Ala. 1989)."
Hannah v. Gregg, Bland & Berry, Inc., 840 So.2d 839, 858 (Ala.2002) (emphasis omitted).
In this case, regarding the alleged defectiveness of the foot straps of the tree stand, Davis testified that a "redesign" would have likely prevented Garrie's fall, but he provided no detail or explanation about a safer, practical, alternative design. Regarding both the allegations that Summit should have equipped the tree stand with a body harness and that the foot straps were defective, Garrie presented *466 no evidence indicating that the utility of any specific alternative designs outweighed the utility of the designs actually used. Accordingly, as Summit argued in its summary-judgment motion, Garrie did not offer substantial evidence of a safer, practical, alternative design as required under the AEMLD. See id. Therefore, the trial court did not err in entering a summary judgment in favor of Summit as to Garrie's AEMLD claim. See Yarbrough v. Sears, Roebuck & Co., 628 So.2d 478, 482 (Ala.1993) (affirming a summary judgment in favor of the defendants on an AEMLD claim when the plaintiff failed to present substantial evidence of a safer, practical, alternative design).
We next address the summary judgment entered on Garrie's negligence claims. As noted, Summit asserted in its summary-judgment motion that Garrie's negligence claims are barred because, Summit said, Garrie was contributorily negligent as a matter of law. Garrie argues that Summit did not establish that he was contributorily negligent as a matter of law.
"`Contributory negligence is an affirmative and complete defense to a claim based on negligence. In order to establish contributory negligence, the defendant bears the burden of proving that the plaintiff 1) had knowledge of the dangerous condition; 2) had an appreciation of the danger under the surrounding circumstances; and 3) failed to exercise reasonable care, by placing himself in the way of danger. See Knight v. Alabama Power Co., 580 So.2d 576 (Ala. 1991).'"
Serio v. Merrell, Inc., 941 So.2d 960, 964 (Ala.2006) (quoting Ridgeway v. CSX Transp., Inc., 723 So.2d 600, 606 (Ala. 1998)).
"A plaintiff cannot recover in a negligence action where the plaintiff's own negligence is shown to have proximately contributed to his damage, notwithstanding a showing of negligence on the part of the defendant. Likewise, a plaintiff's contributory negligence will preclude recovery in an AEMLD action. The question of contributory negligence is normally one for the jury. However, where the facts are such that all reasonable persons must reach the same conclusion, contributory negligence may be found as a matter of law.
"To establish contributory negligence as a matter of law, a defendant seeking a summary judgment must show that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred. The proof required for establishing contributory negligence as a matter of law should be distinguished from an instruction given to a jury when determining whether a plaintiff has been guilty of contributory negligence. A jury determining whether a plaintiff has been guilty of contributory negligence must decide only whether the plaintiff failed to exercise reasonable care. We protect against the inappropriate use of a summary judgment to establish contributory negligence as a matter of law by requiring the defendant on such a motion to establish by undisputed evidence a plaintiff's conscious appreciation of danger."
Hannah, 840 So.2d at 860-61 (citations omitted).
Summit contends that Garrie was contributorily negligent by failing to wear the safety belt as he climbed down the tree from which he fell. Garrie contends that he was not contributorily negligent because, he says, he did not consciously appreciate the danger posed by climbing *467 down the tree without using the safety belt. In his deposition, Garrie testified:
"Q. [By counsel for Summit:] What did you understand [the safety belt] to be for?
"A. It was a safety device.
"Q. In case you fell, to keep you from falling to the ground?
"A. Yeah.
"Q. And it came with your stand?
"A. [Yes].
". . . .
"Q. You understood that [the safety belt] was intended for your safety?
"A. Yeah.
"Q. Did you understand that you should use it when you're climbing the tree?
"A. Well, you couldn't use it climbing the tree. You couldn't use it climbing, period. It wasn't designed for that.
". . . .
"Q. And did you [use the safety belt during the first two hunting seasons that you had the tree stand]?
"A. Yeah, I used it. . . .
"Q. Until you decided to stop using it?
"A. Yeah. People [were] getting smothered to death and hung with [the safety belts].
"Q. Do you know of anyone who was injured using a [safety belt]?
"A. Not personally. But, you know, news and people talking. . . . [W]e thought it was safer without it.
". . . .
"Q. If you had had your fall protection around your chest and tied to the tree, would you have fallen to the ground?
"A. No. But I [would have] been hanging under the stand.
"Q. Well, we don't know that, do we?
"A. That was my theory, anyway.
"Q. You wouldn't have fallen, would you?
"A. I would[n't] have had it tied off because you can't tie it off the tree. If I had had it on, it wouldn't have been tied coming down."
Garrie's testimony indicates that he believed that he could not use the safety belt as he climbed up or down a tree with the tree stand. That is, Garrie's subjective belief was that the safety belt was not capable of being used while climbing. Garrie's testimony suggests that he believed that the safety belt could be used only when a hunter was stationary in the tree stand and that using the safety belt while climbing was not a viable safety option. Viewing the evidence in the light most favorable to Garrie, the nonmovant, see Hobson, 690 So.2d at 344, we cannot say that the evidence established that Garrie consciously appreciated the danger involved by not wearing his safety belt while climbing with the tree stand.[2]
Summit argues that Garrie was contributorily negligent based on our supreme court's decision in Burleson v. RSR Group Florida, Inc., 981 So.2d 1109 (Ala.2007). In Burleson, the plaintiffs, the coadministrators of Burleson's estate, sued various defendants, alleging that the defendants had designed and manufactured a revolver that proximately caused the death of Burleson. Burleson owned the revolver, which could not be discharged when the manual safety was engaged. One day, as Burleson hung the revolver in its holster on a gun rack, the revolver fell from the holster, struck a desk, and discharged. *468 The discharged round struck Burleson, and he died as a result of the wound. The defendants moved for a summary judgment on the grounds that Burleson had assumed the risk and was contributorily negligent, and the trial court entered a summary judgment in the defendants' favor.
On appeal, the plaintiffs in Burleson argued that the revolver was defective because, they said, "it was designed without an internal passive safety device that would have prevented it from discharging when it fell and struck the desk, regardless of whether the manual safety was engaged." 981 So.2d at 1112. However, our supreme court concluded that Burleson's contributory negligence barred recovery. The supreme court stated:
"`Direct evidence of such an appreciation of danger is not required if the evidence admits of no conclusion except that the plaintiff must have appreciated the hazard involved. It is enough if the plaintiff understood, or should have understood, the danger posed. Ridgeway [v. CSX Transp., Inc., 723 So.2d 600, 606 (Ala.1998)].
"`. . . .'
"Serio [v. Merrell, Inc.], 941 So.2d [960,] 965 (Ala.2006).
". . . [T]he danger of handling a firearm with a live cartridge chambered in line with the hammer and the firing pin without having first engaged the manual safety is self-evident, especially to an experienced and safety-conscious gun owner like [Burleson], so that reasonable people would have to logically conclude that he should have at least appreciated the danger associated with doing so."
Burleson, 981 So.2d at 1113-14.
Based on the evidence submitted in this case, we cannot conclude that the danger involved in Garrie's failing to wear a safety belt while descending the tree is a self-evident danger of which he should have been aware. In Burleson, it was undisputed that Burleson's revolver would not have accidentally discharged had the manual safety been engaged. In this case, Davis, Garrie's expert witness, testified that a hunter "is not adequately protected from a fall when using the [safety] belt." Moreover, based on Garrie's testimony, there appears to be a question regarding whether the safety belt could even be used while climbing up or down the tree. Therefore, in this case, unlike the situation in Burleson, there is a factual question regarding whether using the safety belt would have adequately protected the user from falling. Based on the evidence in the record before us, we conclude that Garrie's failure to wear the provided safety belt is not the sort of self-evident danger, like the one in Burleson, that would make him contributorily negligent as a matter of law for not wearing the safety belt. Accordingly, because Garrie did not consciously appreciate the danger posed by not wearing the safety belt, see Hannah, 840 So.2d at 860-61, and because that danger was not the type of self-evident danger of which he should have been aware, see Burleson, 981 So.2d at 1113-14, we cannot say that Garrie was contributorily negligent as a matter of law.
On application for rehearing, Summit argues that the evidence submitted by Garrie was insufficient to establish essential elements of his negligence claims. Therefore, on that basis, Summit argues that this court should affirm the trial court's summary judgment entered in Summit's favor on Garrie's negligence claims. However, with respect to the negligence claims, Summit moved for a summary judgment on only two grounds: that the negligence claims were subsumed by the AEMLD claim and that Garrie was contributorily negligent. Typically,

*469 "[an appellate court] will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. Ex parte Ryals, 773 So.2d 1011 (Ala.2000), citing Ex parte Wiginton, 743 So.2d 1071 (Ala.1999), and Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala. 1988). This rule fails in application only where due-process constraints require some notice at the trial level, which was omitted, of the basis that would otherwise support an affirmance, such as when a totally omitted affirmative defense might, if available for consideration, suffice to affirm a judgment, Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458 (Ala.2002), or where a summary-judgment movant has not asserted before the trial court a failure of the nonmovant's evidence on an element of a claim or defense and therefore has not shifted the burden of producing substantial evidence in support of that element, Rector v. Better Houses, Inc., 820 So.2d 75, 80 (Ala.2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and Kennedy v. Western Sizzlin Corp., 857 So.2d 71 (Ala.2003))."
Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found. P.C., 881 So.2d 1013, 1020 (Ala.2003) (emphasis added).
Because Summit did not move for a summary judgment on the ground that Garrie's evidence was insufficient to establish essential elements of his negligence claims, the burden did not shift to Garrie to offer substantial evidence in support of those elements. Therefore, we cannot affirm the trial court's summary judgment on the negligence claims on the ground that Garrie's evidence was insufficient to establish essential elements of those claims. Liberty Nat'l, supra; see, e.g., Wilson v. C-Sharpe Co., 37 So.3d 797, 804 (Ala.Civ.App.2009). Because Garrie's negligence claims were not subsumed by his AEMLD claim and because Summit was not entitled to a summary judgment on the negligence claims on the ground of contributorily negligence, we must conclude that the trial court erred in entering a summary judgment with respect to the negligence claims.
We next address Garrie's wantonness claims. Our supreme court has defined "wantonness" "`as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.'" Bozeman v. Central Bank of the South, 646 So.2d 601, 603 (Ala.1994) (quoting Stone v. Southland Nat'l Ins. Corp., 589 So.2d 1289, 1292 (Ala. 1991)). In arguing that the trial court erred by entering summary judgment on the wantonness claims, Garrie does not identify any allegation of conduct by Summit that would represent a wanton act or omission. Accordingly, he has not established that the trial court erred in entering summary judgment as to the wantonness claims. See Serio v. Merrell, Inc., 941 So.2d at 966.
Garrie also argues that the trial court erred in entering a summary judgment on his claim alleging breach of implied warranty of merchantability because, Garrie says, Summit did not move for a summary judgment on that claim.[3] Initially, we note that Summit moved for a summary *470 judgment on "all claims." However, Summit did not appear to assert specific grounds for a summary judgment with respect to the breach-of-implied-warranty claim. Assuming, as Garrie argues, that Summit did not properly move for a summary judgment on the claim alleging breach of implied warranty, the propriety of the trial court's entry of a summary judgment on that claim was not properly preserved for our review. Garrie did not object to the entry of a summary judgment as to the breach-of-implied-warranty claim in a postjudgment motion. Accordingly, this case is analogous to Employees of the Montgomery County Sheriff's Department v. Marshall, 893 So.2d 326 (Ala.2004).
In Marshall, the plaintiffs sued Sheriff D.T. Marshall in both his official and individual capacities. Sheriff Marshall moved for a summary judgment in his official capacity only. However, the trial court entered a summary judgment in favor of Sheriff Marshall in both his official capacity and his individual capacity. The plaintiffs then appealed to the supreme court. With respect to the summary judgment in favor of Sheriff Marshall in his individual capacity, the supreme court stated:
"Since the sheriff's motion did not challenge the plaintiffs' claims against the sheriff in his individual capacity, the motion did not meet the initial burden of the sheriff in his individual capacity, that is, `"the burden of production, i.e., the burden of making a prima facie showing that he is entitled to summary judgment."' Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala. 1999) (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)). However, the record before us does not reveal whether the plaintiffs objected to the trial court in a timely postjudgment Rule 59(e), Ala. R. Civ. P., motion that the trial court erred in failing to limit the summary judgment to the claims against the sheriff in his official capacity, see Hatch v. Health-Mor, Inc., 686 So.2d 1132, 1132 (Ala.1996) (`[I]t was error for the trial court to enter a summary judgment as to all of [the plaintiff's] claims, because one claim. . . was not before the trial court on the summary judgment motion'), and Henson v. Mobile Infirmary Ass'n, 646 So.2d 559, 562 (Ala.1994) (`[W]e observe at the outset that the trial court could not properly enter the summary judgment as to all of [the plaintiff's] claims. Counts one and two . . . were not before the trial court on the [defendant's] motion'). Such a Rule 59(e) motion would have been necessary to preserve such an objection for an appeal `because this issue [did] not involve a question of law that ha[d] been the subject of a previous objection and ruling.' McKenzie v. Killian, 887 So.2d 861, 865 (Ala.2004)."
893 So.2d at 330-31 (final emphasis added). Accordingly, in this case, because Garrie did not object to the entry of the summary judgment on the claim alleging breach of implied warranty by a timely postjudgment motion, he did not preserve the issue of the propriety of that ruling for our review.
We reverse the trial court's summary judgment with respect to Garrie's negligence claims, and we remand the case. Regarding all other claims, we affirm the summary judgment entered in favor of Summit.
APPLICATION FOR REHEARING GRANTED; OPINION OF AUGUST 21, 2009, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
*471 MOORE, J., concurs in the result, without writing.
THOMPSON, P.J., concurs to grant the application for rehearing but dissents as to the opinion, without writing.
NOTES
[1] The record on appeal does not contain a visual depiction of the tree stand.
[2] The record contains no document containing directions for using the tree stand, directions which may have clearly indicated how the safety belt was intended to be used.
[3] Garrie does not argue that the trial court erred in entering a summary judgment on his claim alleging breach of express warranty.